W. S. FOSTER, Appellant, v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY CO.

**Railroads:** ASSUMPTION OF RISK. A section hand who continues to use without complaint a hand car known to be defective, assumes the risk of injury incident thereto.

**Same.** A servant's implied assumption of the risk arising from the continued use of known defective machinery is suspended upon the promise of the master to repair the same, and remains intact

so long as he may reasonably expect the promise to be fulfilled.

**Negligence:** EVIDENCE. In an action for injuries to a section hand who was thrown from a hand car, the evidence is held to justify a finding that had the brake been in repair the car would probably have been stopped in time to have avoided the injury.

**Contributory negligence.** The question of plaintiff's contributory negligence in riding upon a loaded hand car which he knew to be defective and therefore liable to lurch and hard to stop, with but one hand on the handlebar, was, under the circumstances shown one for the jury.

**Failure to repair machinery:** LIABILITY OF MASTER: PROXIMATE CAUSE. The omission of the master to exercise reasonable care in repairing machinery, the defective condition of which he should have anticipated was likely to result in injury to a servant, will render him liable for an injury proximately resulting therefrom, although th particular accident which did happen might not have been foreseen.

*Appeal from Cass District Court.*—HON. N. W. MACY, Judge.

FRIDAY, FEBRUARY 10, 1905.

ACTION for damages. Verdict was directed for defendant, and from judgment thereon the plaintiff appeals.— *Reversed.*

*H. M. Boorman* and *Willard & Willard,* for appellant.

*Carroll Wright, John I. Dillie,* and *J. B. Rockafellow,* for appellee.

LADD, J.—The plaintiff was a section hand employed at Wiota. On the morning in question he and nine others, including the foreman, boarded a hand car, on which the tools ordinarily used by the men, together with their dinner pails, a water cask and some plank, had been placed. They were going to work some five miles east of town. The plank had been placed on the north side of the car, and on

the front end of it two men sat, and one man on the back end. Three men were at the back handle of the propelling lever, facing the east. One man stood at the north side, and another at the south side, between. the front and back handles, facing the east. Two men stood before the front handle, with their backs towards the east; the one to the north being the plaintiff. The four in front were somewhat crowded, so that the plaintiff took hold of the handle with his right hand only, and stood with his face turned somewhat to the south. After going about a mile eastward he turned his head back of the man next to the south to blow his nose, and just as he did so the car made a lurch to the north, and threw him out of balance, so that he lost his handhold, and jumped backwards in front of the moving car. After staggering some distance, he was struck by it on the leg, which was broken, thrown to the ground, and run over. The evidence was not such as to indicate any improper loading of the car, and the charge of neglect in this respect was not made out.

It appears that the wheels on the hand car were eight or ten inches apart on each side, and were fastened to the axle, and it turned in the boxing below the frame, rather

1. ASSUMPTION OF RISK.

than the wheels on the axle. A cogwheel in the center turns the axle, and is worked by the propelling lever. One wheel was loose on the axle, and the axle had a play of two or three inches in the boxing; and, because of this, the car oscillated or swayed back and forth on the track. This the plaintiff well knew a long time before the accident, and, as he had made no complaint, must be held to have assumed the risk incident thereto. To the suggestion that he may not have comprehended the danger, it is enough to say that he had equal, if not a better, opportunity for judging than the defendant. *Bryce v. Ry.*, 103 Iowa, 665; *Box v. Ry.*, 107 Iowa, 660; *Branco v. Ry.*, 119 Iowa, 211. He is not in a situation to complain of any defect in the car which may have caused him to leave it.

If the defendant is blamable at all, it is because of the failure of its foreman to stop the car in time to have avoided the injury.     The latter was warned to stop the instant plaintiff lost his hold, and at once stepped on the brake, and did his utmost to bring the car to a standstill.     The brake consists of two wooden shoes hung on bolts next to the wheels.     There is a center bar, with a square piece or plate on top for the foot, and two levers extending from this to the bottom of the shoes.     By stepping on the center bar or plate, these shoes are pressed outward against the wheels.     The shoes are covered with leather or rubber. The evidence tended to show that this leather or rubber had become so worn that it was inefficient in stopping the car. This condition had been called to the attention of the foreman by the plaintiff a day or two previous to the accident, and the latter had promised to repair it.     In reliance upon this, plaintiff continued in employment.

2. SAME.

The plaintiff testified that he did not know how far he sprang back, but that he struck the ground on both feet, facing the car, and that he staggered back eight or ten feet before it struck him.     In his words:  " It either rolled me along or shoved me along on the ties under the car.     I remember being dragged along on the ties under the car.     I could not tell how far.     Probably the length of a rail — thirty feet.     One wheel of the car ran over my head and broke my jaw.     The cogwheel caught me and turned me around under the car."     Other witnesses estimated that the car, after striking him, went from twelve to twenty feet.     The speed of the car was variously estimated at from two and one-half to six miles an hour.     The distance within which a car loaded as this was, with brakes in good repair, and under like conditions, could be stopped by a man of the weight of the foreman, was estimated by two witnesses at two to four feet, when going from two and one-half to three miles per hour, and at four to six feet when moving at six miles an hour, while another fixed the space at twelve

or fourteen feet when moving at the latter speed, and one-third as far when at the former. The jury might have found that, had the brake been in repair, the foreman might and probably would have stopped the car in time to have avoided the injury.

II.   It cannot be held, as a matter of law, that plaintiff was guilty of contributory negligence. He could not well have kept both hands on the hand bar, as then his left elbow would have interfered with his neighbor. Of necessity, he stood sidewise, and had merely turned his head to blow his nose when he lost his balance. Whether, in view of the condition of the axle and brakes, he failed to exercise reasonable care for his safety was an open question.

3. NEGLIGENCE: evidence.

III.   Nor do we think he should be held to have assumed the risk incident to the defective brake shoes. He testified that one or two evenings previous to the accident he had called the foreman's attention to their dangerous condition, and he had promised to repair them. This obviated the effect of the waiver which must otherwise have been implied from his knowledge of their condition and continuance in employment. See *Ford v. Ry.*, 106 Iowa, 85. Appellee urges, however, that sufficient time within which to make the repair had not elapsed. The waiver does not continue until the employer may by reasonable diligence effect the repair, but it is suspended *eo instante* upon the making of the promise. This is on the ground that the servant is influenced to continue work by the master's promise to repair. From that time on the risk is the master's, and not that of the servant, as long as the latter may reasonably expect the promise to be performed. Says Judge Cooley in his work on Torts, p. 559: "The assurances remove all ground for argument that the servant, by continuing the employment, engaged to assume its risks." And this language is employed in Shearman & Redfield on Negligence, section 96: "There can be no doubt

4. CONTRIBU- TORY NEGLI- GENCE.

that, when a master has expressly promised to repair a defect, the servant can recover for an injury caused thereby within such a period of time after the promise as it would be reasonable to allow for its performance, and, as we think, for any injury suffered within any period which would not preclude all reasonable expectation that the promise might be kept." *New Jersey & N. Y. Ry. Co. v. Young,* 49 Fed. 723 (1 C. C. A. 428); *Hough v. Ry. Co.,* 100 U. S. 213 (25 L. Ed. 612); *Roux v. Lumber Co.,* 85 Mich. 519, (48 N. W. Rep. 1092, 13 L. R. A. 728, 24 Am. St. Rep. 102); *McFarlan Carriage Co. v. Potter,* 21 Ind. App. 692 (51 N. E. Rep. 737); *Burnes v. Windfall Mfg. Co.,* 146 Ind. 261 (45 N. E. Rep. 188), is not in point, for there the promise to repair was not general, but as soon as the present order run out. The distinction is pointed out in *McFarlan Carriage Co. v. Potter,* 21 Ind. Sup. 692 (52 N. E. Rep. 209):

The promise to repair only has the effect of relieving him from his implied assumption of the risk for such length of time as would be reasonably sufficient in which to make the repairs or remedy the defect, and in which he might reasonably expect the same to be done. If the injury occurs within that period, the injured servant may recover, because he is relieved during that period from his agreement, implied by law from his knowledge, that he will serve on at his own risk. This is afforded to him because he may during that time reasonably expect the repairs to be made or the defect remedied. Where, however, the agreement to repair or remedy the defect is, as in this case, not to be begun until after the job on which the servant is then at work, the agreement is not operative until that time arrives, because, during the time which intervenes between the making of the promise and the time when the promise is to be performed, the servant has no reason to expect the repairs to be made or the defect remedied. And hence during that time there is nothing to relieve him of his agreement implied by law from his continuation in the service with knowledge of the augmented risk caused by the defect, any more than during the time prior to making the promise to repair.

As remarked in *Green v. Ry. Co.*, 31 Minn. 248 (17 N. W. Rep. 378, 47 Am. Rep. 785): "If the emergencies of the master's business require him temporarily to use defective machinery, we fail to see what right he has, in law or natural justice, to insist that it shall be done at the risk of the servant and not his own, when, notwithstanding the servant's objection to the condition of the machinery, he has requested and induced him to continue its use under a promise thereafter to repair it."

IV.    But the defect in the brakes had nothing to do with causing the plaintiff to leap from the car, and, as he had assumed the risk of the defective axle or boxing, that act cannot be attributed to any actionable negligence on the part of defendant. Nor can what plaintiff did be said to have resulted from any fault on his part.

5. FAILURE TO REPAIR MACHINERY: liability of master; proximate cause.

The foreman was shown to have put forth his best efforts to stop the car as soon as possible, and no fault can be found with what was done after plaintiff's situation was known. But the jury might have found that the injuries of plaintiff were the direct consequences of the defective condition of the brakes, and that such condition was due to defendant's negligence. The duty to equip hand cars with suitable appliances for stopping them, and to keep these in reasonable repair, will not be questioned; and, in omitting to remedy the defect in the brakes, the company may well have been found wanting in the exercise of that degree of care exacted by the law, from which injury to others was reasonably to be anticipated. Doubtless the particular situation might not have been foreseen, but this was not essential to making out a charge of negligence. Accidents as they occur are seldom foreshadowed; otherwise many would be avoided. If the act or omission is of itself negligent and likely to result in injury to others, then the person guilty thereof is liable for the natural consequences which occurred, whether he might have foreseen it or not. In other words, if the act or omission is one which the party ought, in the

exercise of ordinary care, to have anticipated was likely to result in injury to others, then he is liable for any injury proximately resulting therefrom, although he might not have foreseen the particular injury which did happen. *Christianson v. Ry.*, 67 Minn. 94 (69 N. W. Rep. 640); *City of Dixon v. Scott*, 181 Ill. 116 (54 N. E. Rep. 897); *Hill v. Winsor*, 118 Mass. 251. See cases collected in 21 Am. & Eng. Enc. of Law (2d Ed.) 486 *et seq.*

It follows from what we have said that, upon the charge of negligence in failing to keep the brakes in repair, the cause should have gone to the jury.—*Reversed.*