Marcum v. Three States Lumber Company.

Opinion delivered October 26, 1908.

1. Master and servant—defective machinery—assumption of risk.—The assumption of risk implied from a servant's knowledge that a tool, instrument, appliance, piece of machinery or work is defective

or dangerous is suspended by the master's promise to repair, made in response to the servant's complaint; so that if the servant is induced by such promise to continue at work he may recover for an injury which he sustains by reason of such defect within a reasonable time after making the promise, provided he uses due care, unless the defect renders the appliance so obviously dangerous that a reasonably prudent person would decline to use it at all unless it was repaired. (Page 34.)

2. SAME—CONTRIBUTORY NEGLIGENCE.—Where a servant complains of injuries caused by the master furnishing defective machinery, the question whether the servant was negligent in using it was properly left to the jury if the machinery was complicated, or if the danger from its use depended upon the want of due care of fellow servants engaged in operating it, so that, although the facts were undisputed, reasonable minds might draw different conclusions as to the servant's negligence. (Page 36.)

3. SAME—CONCURRING NEGLIGENCE OF VICE PRINCIPAL AND FELLOW SERVANT.—A master is liable for the negligence of a vice-principal concurring with that of a fellow servant. (Page 37.)

Appeal from Mississippi Circuit Court, Osceola District; *Frank Smith*, Judge; reversed.

### STATEMENT BY THE COURT.

This is an action by James Marcum against the Three States Lumber Company to recover damages for breaking his leg on January 17, 1907, while in the employ of the company. The defendant company was at the time operating a steam log skidder, used for dragging or skidding logs from the woods to the railroad. The machine was made by the Clyde Iron Works, and consisted of a steam engine mounted on a flat car with a boom about 32 feet long at each end and extending in both directions, front and rear, at an angle of about 45 degrees, each of which stood directly over the railroad. It was about 32 feet from the engine to the end of each boom, and on the end of the boom was a pulley over which a steel cable worked. One end of the cable was attached to a drum near the engine, and it extended out over the pulley on the end of the boom. Attached to the other end of the cable was a pair of tongs, which weighed about 75 pounds. They were constructed on the principle of ice tongs. They were made of octagon steel, six-sided like a rifle barrel, and were, except at the points, one and seven-eighths inches in

diameter. They were sharp pointed for the purpose of being fastened to a log four or five inches from its end.

The machine was operated in this way: The tongs attached to the cable would be dragged into the woods, where the logs were, by a horse. The tongs would be fastened on the end of the log by a man called a "hooker." The hooker would then signal the flagman, and he in turn would then flag the engineer, who would start the engine. The engine would wind up the cable on the drum like a spool of thread, and this winding of the cable would skid the log to the railroad. The tongs were so constructed that when in perfect condition the harder the engine would pull, the tighter the tongs would clutch the log. If, while skidding a log from the woods to the railroad, it should strike the root of a tree or other obstruction, the usual and customary way of releasing it was to unhook the cable from the ring in the end of the tongs, place it around a stump or a tree standing a little to one side or the other of a straight line from the log to the engine, and then again hook the cable to the ring in the end of the tongs. Then, by the same process of signalling as before, the engine would be started, the log wrenched to one side and released from the obstruction.

When the Clyde Iron Works shipped this machinery to the defendant, it sent along one Mr. Hall as an instructor, whose duty it was to teach the employees of the defendant company how to operate the machine. Plaintiff was an engineer by profession, and was placed in charge of the engine by defendant. Mr. Gibson, the general foreman of the defendant company, told him to do whatever Mr. Hall told him to do, to do it just like he told him to do it, and learn all about the business. About the fourth or fifth day after they commenced operating the machinery, Hall came to the plaintiff and told him that he would take his place on the engine for a while, and directed plaintiff to go into the woods, help the hookers hook logs awhile, and learn how it was done. He gave as a reason for this order that he thought from all he had heard that plaintiff would be made foreman of the crew.

On that morning they were running two lines of cables. Mr. Cannon was the hooker for one line, and Mr. Reed for the other. The tongs that Cannon was using were fastened to the cable

with a clevis or hook, similar to a 'hook on a log chain. The
hook on the cable that Reed was using had been almost straight-
ened out the day before, and the cable was welded on the tongs.
The tongs that Reed was using on that morning were sprung—
that is, they were nearer straight than they should be—and on
account of this defect they would sometimes slip from the end
of the log, when the cable was being pulled, and jump a consid-
erable distance, 35 or 40 feet. The fact that the tongs were
sprung was known to the plaintiff at the time the injury was
received. Either the day before or that morning the tongs had
pulled out of a log; then it came across the end of the boom and
struck the side of the cab of the engine, and knocked a hole in
it as big as a five gallon keg. The cab was made out of seven-
eighths inch pine lumber. At that time plaintiff was running the
engine. He called the attention of Mr. Gibson to the accident,
and told him some one would get killed or crippled with the
tongs unless they were fixed. Mr. Gibson told the plaintiff to
go ahead; that he would furnish new tongs or repair those in a
day or two.

When Mr. Hall directed plaintiff to go out in the woods and
assist in the hooking and skidding for awhile, he first went over
on Cannon's line and saw him hook two or three logs. He then
went over to Reed's line, and the first log they hooked after
he arrived struck an oak tree that had been cut down, and the
tongs slipped out. The oak tree was then cut out of the way,
and, fastening the hooks in a new place, they started with the
log again. They did not go far until the log struck a maple
root. About 10 or 12 feet to the right of the cable, and about
35 feet from the end of the log, stood a stump. There was a
man who rode a mule that drags the tongs back in the woods.
Reed said, "We will have the rider to pull the line around the
stump." Plaintiff said that he thought that Reed and himself
could pull the line over it; so Reed and the plaintiff took 'hold
of the cable with their hands, lifted it over to the right, and
placed it behind the stump. As soon as the cable was placed
behind the stump, without waiting for the signal to start, the
engine began to pull the cable, and the plaintiff at the same time
started to get out of the way. He had gone only a few feet

when the tongs slipped from the end of the log and struck him, breaking his leg.

The plaintiff had worked around a sawmill a great many years. He had assisted in operating other makes of log loading machines. The plaintiff was the only witness examined at the trial, and the above is substantially his statement of how the injury occurred and the incidents connected with it. At the conclusion of his testimony, the court directed a verdict for the defendant, and plaintiff has appealed.

*J. T. Coston,* for appellant.

1. The servant assumes the risks ordinarily incident to his employment. 92 S. W. 246. If a new risk arise on account of a defect in the machine, implement or appliance, the servant will not be deemed to have assumed the new risk, even after he discovers the defect, unless he is also aware of the danger; and not then unless the danger is so patent that a reasonably prudent person would not continue in the service. 92 S. W. 247. He will not be deemed to have assumed the new risk, if, after discovering the defect, he promptly complains to the master, and the latter promises to remedy the defect. 1 Labatt, Master & Servant, § 424; *Id.* p. 1198; 70 S. W. (Ark.) 606; 100 S. W. (Ark.) 744; 4 Thompson on Neg. § 4467; 47 Atl. 1018; 49 Atl. 1037; 8 So. 218; 58 N. E. 417; 36 N. E. 574; 29 S. W. 675; 59 N. W. 188; 53 N. E. 467; 100 U. S. 225.

2. When a log would meet an obstruction, and the cable be placed behind a stump for the purpose of releasing it, it had always been the custom not to start the machinery until the hookers had reached a place of safety. This custom was tantamount to a fixed rule of business. 1 Labatt on Master & Servant, 474. Appellant, being aware of the custom and believing that it would be followed in this instance, had a right to rely on its observance. There was therefore no imminent danger, obvious to him, and no contributory negligence on his part. 92 S. W. 248; 100 S. W. 85; 10 S. W. 606; 77 S. W. 913; 107 S. W. 376; 1 Labatt on Master & Servant § 355; 68 N. W. 776.

3. Where the negligence of the principal and that of a fellow servant together produce an injury, the principal is liable. 99 Fed. 51; 203 U. S. 473; 106 U. S. 702; 67 Ark. 8; 4 Thomp-

son on Neg. § 4858; 2 Labatt, M. & S. § 814; 3 N. E. 577-8·
21 N. E. 347; 42 Pac. 344; 67 Fed. 885; 25 N. E. 915. The
defect in the tongs contributed to the injury, and appellee is
liable, even though the negligence of a fellow servant also con-
tributed to the happening of the accident. 61 N. W. 912; 24
S. E. 233; 138 Mass. 436.

*W. J. Lamb* and *W. J. Orr,* for appellee.

1. There was a total failure of proof that the condition of
the tongs complained of caused the accident. "Where the evi-
dence leaves material facts admitted and undisputed, and they
are of such a conclusive character that the court could give
effect to but one verdict, it is the duty of the court to direct a
verdict." 131 Fed. 712; 150 U. S. 245; 152 U. S. 262; 113
U. S. 227; 139 U. S. 469; 39 Am. St. Rep. 264; 99 N. W. 827;
103 N. W. 1017; 137 Fed. 557; 128 Fed. 679; *Id.* 32. The rec-
ord being entirely silent as to what caused the tongs to break
loose from the log to which it was attached, and the burden
being upon the appellant to show negligence on the part of
appellee, the inference most favorable to the appellee from the
undisputed evidence must be taken. 88 S. W. 988; 91 Mo. App.
539 and cases cited; 63 Atl. 204; 93 S. W. 869; 48 S. E. 509;
155 Mo. 382; 2· Am. St. 193; 15 Wall. 524; 47 Am. Rep. 566;
9 Am. & Eng. R. Cas. 445; 164 Mass. 257.

2. The proof without conflict shows that appellant fully
appreciated the only danger incident to the use of the appliances
furnished, knew more about them than the master, and hence
assumed the risks incident to their use. 92 S. W. 244; 81 Ark.
343; 56 Ark. 232; 114 N. W. 853. It is not the law that a
complaint by the servant and a promise by the master to repair
relieves the servant of the assumption of risks of dangers known
to and appreciated by him. The promise relieves from assump-
tion of risk only where it amounts to an assurance that the ap-
pliance or place is safe. 70 S. W. 606; 100 S. W. 743; 72 N. E.
393; 68 N. E. 938; 138 Ind. 290; 97 Tenn. 615; 6 C. C. A. 190;
55 Ark. 483; 126 Fed. 495. See also 127 Fed. 609; 27 Pac.
701; 4 Pa. 544; 53 S. E. 97; 43 N. E. 961; 75 N. E. 288.

3. Appellant was guilty of contributory negligence in know-
ingly occupying the only place of danger about the premises,

when a better and safer place was furnished him by the master. Hence he cannot recover. 95 U. S. 439; 41 Ark. 542; 70 Ark. 603; 128 Fed. 529; 76 Fed. 125; 118 Mo. App. 152; 54 S. E. 110; 53 S. E. 658; 40 So. 280; 88 S. W. (Ark.) 988; 89 S. W. 512.

HART, J. (after stating the facts). In support of the judgment of the court directing a verdict for the defendant, now appellee, it is contended that upon the undisputed facts of the case the plaintiff, now appellant, must be deemed to have accepted the risk of such injury as befell him.

In a note to the case of *Foster* v. *Chicago, &c., Ry. Co.,* 127 Iowa 84, 4 Am. & Eng. Ann. Cas., 153, the servant's assumption of risk, as affected by the master's promise to repair, is aptly stated as follows: "It is a well settled general rule that the assumption of risk implied from a servant's knowledge that a tool, instrument, appliance, piece of machinery or piece of work is defective or dangerous is suspended by the master's promise to repair, made in response to the servant's complaint, so that if the servant is induced by such promise to continue at work he may recover for an injury which he sustains by reason of such defect within a reasonable time after the making the promise, provided he exercises due care, unless the defect renders the appliance so imminently and obviously dangerous that a reasonably prudent person would decline to use it at all until it was repaired."

Many decisions from a great number of the States are cited to support the rule. Mr. Thompson, in his work on Negligence, vol. 4, § 4667, expresses the same views; and adds that under such circumstances "he will not, as a matter of law, be put in the position of having accepted the risk, but whether he has done so will be a question for the jury." See also 1 Labatt on Master and Servant, § 453.

The latest decision of our court in which the rule has been recognized and applied is the case of *St. Louis, I. M. & S. Ry. Co.* v. *Mangan,* 86 Ark. 507, in which the prior decisions of our court on the subject to the same effect as the rule above quoted are cited and approved. In the case of *Greene* v. *Minneapolis & St. Louis Ry. Co.,* 31 Minn. 248, the court said:

"If a servant who has knowledge of defects in the instrumentalities furnished for his use gives notice thereof to his employer, who thereupon promises that they shall be remedied, the servant may recover for an injury caused thereby, at least where the master requested him to continue in the service, and the injury occurred within the time at which the defects were promised to be remedied, and where the instrumentality, although defective, was not so imminently and immediately dangerous that a man of ordinary prudence would have refused longer to use it. Under such circumstances his subsequent use of the defective instrumentality would not necessarily, or as a matter of law, make the servant guilty of contributory negligence, but it would be a question for the jury whether, in continuing its use after he knew of the defect, he was in the exercise of ordinary care." The opinion was delivered by Mr. Justice Mitchell, and in support of it he cited, among other cases, that of *Hough* v. *Railway Company,* 100 U. S. 213. The latter is a leading case on the question, and has been followed in numerous decisions of the State as well as United States courts.

We also call attention to the following cases as sustaining the decision: *Indianapolis & St. Louis Ry. Co.* v. *Watson,* 114 Ind. 20; *Erdman* v. *Illinois Steel Co.,* 95 Wis. 6; *Rothenberger* v. *Northwestern Consolidated Milling Co.,* 57 Minn. 461; *Patterson* v. *Pittsburg & Connellsville Rd. Co.,* 76 Pa. St. 389; *McKelvey* v. *Chesapeake & Ohio Ry. Co.,* 35 West Va. 514.

Counsel for appellee rely upon the case of *Railway Co.* v. *Kelton,* 55 Ark. 483, to sustain the action of the court in directing a verdict for it. In that case the court said:

"In an action by a house painter to recover damages for an injury occasioned by a fall from a defective ladder furnished by his employer, he is not entitled to recover if, knowing that the ladder could not be used with any assurance of safety, he continued to use it until the injury occurred, relying upon his employer's promise to furnish a safe ladder." In that case the facts were undisputed, and the court said as a matter of law that the promise on the part of the employer to furnish a better ladder would not justify the employee in looking to his employer for compensation for damages which he sustained by wantonly and recklessly encountering danger which he knew necessarily at-

tended the use of the old ladder.    Later adjudications of our court have said it was a question for the jury, where the servant relies upon the promise of the master to repair, if the appliance is so obviously and imminently dangerous that a reasonably prudent person would decline to use it until it was repaired. There is an apparent, but no real, conflict in the two classes of decisions.    In the Kelton case no special knowledge was required to discern the danger of the continued use of the ladder.    It was not an appliance which required the exercise of skill and care. The danger of its continued use could be as well comprehended by one man as another.    It was used only by the one man.    The case is different where the appliance is either so complicated that the servant may rely upon the superior knowledge of the master, or where it is a machine or appliance which requires several persons to operate it, and the danger in its continued use in its defective condition depends upon the mutual care toward each other of the servants operating it.    This distinction is recognized in the following cases: *Gunning System* v. *Lapointe*, 72 N. E. (Ill.) 393 and cases cited; *Swift* v. *O'Neal,* 58 N. E. (Ill.) 416; *Morden Frog & Crossing Works* v. *Fries,* 81 N. E. (Ill.) 862; *Webster Mfg. Co.* v. *Nesbitt,* 68 N. E. (Ill.) 936; *Marsh* ·v. *Chickering,* 101 N. Y. 396.

The application of the following rule differentiates the two classes of cases: "It is only when the facts are undisputed, and are such that reasonable minds may draw but one conclusion from them, that the question of negligence is ever considered one of law for the court." *St. Louis & San Francisco R. Co.* v. *Summers,* 111 S. W. (Tex. Civ. App.) 211.

Where the servant is engaged in ordinary labor, with tools of simple construction, which are used by himself alone, and where the facts are undisputed, reasonable minds ·must inevitably come to the same conclusion.    Hence there is nothing to submit to the jury.

On the other hand, in the case of complicated machinery, or in cases where the danger in the continued use of the machine or instrumentality depends upon the want of due care of the fellow servants engaged in operating it, although the facts are undisputed, reasonable minds might draw different conclusions.

In such cases the question of negligence is one for the jury. The case under consideration is a good illustration.

The jury might have found that the proximate cause of the injury was the negligence of the master in furnishing defective tongs, together with the concurring negligence of the fellow servants, either the flagman in prematurely signalling the engineer to start the machinery in motion, or the engineer in starting it without a signal. That a master is liable for the negligence of a vice principal concurring with that of a fellow servant, we refer to the following cases: *Archer-Foster Construction Co.* v. *Vaughn,* 79 Ark. 20; *Kansas City, Fort Scott & Memphis Rd. Co.* v. *Becker,* 67 Ark. 1.

The court should also have submitted to the jury under proper instructions the sufficiency of the complaint by the servant and the promise to repair by the master and the servant's reliance on this promise, and the reasonableness of the time to repair.

The judgment is therefore reversed, and the cause remanded for a new trial.