WISCONSIN & ARKANSAS LUMBER ·COMPANY *v.* SCOTT.

Opinion delivered April 3, 1922.

1. NEGLIGENCE—PROXIMATE CAUSE.—To be actionable, negligence must be the proximate cause of the injury complained of; "proximate cause" being a cause from which a person of ordinary experience and sagacity could foresee that the result might probably ensue.

2. MASTER AND SERVANT—PROXIMATE CAUSE OF INJURY—INSTRUCTION.—Where a workman, engaged in unclogging a conveyor trough which had become clogged by reason of its defective condition, fell and caught his clothing on a set screw of a revolving line shaft, and was killed, while it was proper to submit to the jury whether the master was negligent in failing to cover the set screw as the proximate cause of the injury, an instruction which permitted the jury to find negligence in allowing the conveyor chain to become clogged by reason of the defective condition of the trough was erroneous, as such negligence, if proved, could not have been the proximate cause of the injury.

3. MASTER AND SERVANT—QUESTIONS FOR JURY.—In an action for the death of an employee, caught on a set screw of a revolving line shaft, while obeying his superior's command to unchoke a conveyor chain, *held* that the question of contributory negligence and assumed risk were for the jury.

Appeal from Howard Circuit Court; *A. P. Steel.* special Judge; reversed.

STATEMENT OF FACTS.

This is an action by the administrator to recover damages for the death of his decedent, and damages were awarded by the jury under the instructions of the court.

The case is here for the second time. On the former appeal it was held that the trial court erred in telling the jury as a matter of law that his decedent assumed the risk. It was held further that the question of the negligence of the defendant and the question of contributory negligence on the part of the decedent and his assumption of risk under the surrounding circumstances should be left to the jury. *Scott* v. *Wisconsin & Arkansas Lumber Co.,* 148 Ark. 66.

On the first trial of the case the circuit court was of the opinion that the plaintiff, on account of his position and familiarity with the machinery of the defendant, assumed the risk, and the most part of the opinion of this court was directed to a discussion of that phase of the case and in setting forth the reasons why, under the peculiar circumstances of the case, it should not be said as a matter of law that Scott assumed the risk. After concluding a lengthy discussion of this branch of the case the court said:

"Therefore, if the appellee was negligent in having a projecting set-screw at the place where the same was located, and if the deceased had no knowledge of such defective condition and did not appreciate the danger thereof, and if the defect and danger were not so open and obvious that, in the exercise of ordinary care in the performance of his duties, he should have discovered same and have known and appreciated the danger, then he did not assume the risk if he was discharging his duty of unclogging the sprocket wheel and conveyor chain in the customary way acquiesced in by the appellee."

Continuing, the court discussed the feature of the case bearing upon the liability of the defendant result-

ing from Scott carrying out the orders of his superior in keeping the machine running, and his consequent injury while so employed.

It appears from the record that Roy Scott had been lath foreman for about two and a half years before he was killed. It was his duty to keep the conveyor chain going, but he had nothing to do with making repairs on it. On the ground floor there was a machine called a hog, that cut slabs into pieces from a half inch to four inches long. These particles were carried away by conveyor chains to the fuel house and supplied the boilers with fuel. The fuel was carried from the hog on a conveyor chain about twelve or fourteen feet long, and was then poured into a second conveyor trough, which carried it up an incline about 100 feet long to a height of about 15 or 18 feet from the floor. · This conveyor chain ran over a sprocket wheel at its upper end, and was endless. The fuel passed over the sprocket wheel and was poured into another conveyor trough at right angles, which carried it to the fuel room next to the boilers. The bottom of the second or long conveyor trough was lined with tin or sheet iron and was worn in holes in places. Close to the top of it was the worst place. These defects in the lining caused particles of fuel to catch in the defective places and accumulate and eventually to clog the chain. Sometimes a long plank would fall down from the floor above and catch on the conveyor chain and be carried along it and then become entangled in the sprocket wheel, and thereby cause the chain to be lifted off of the sprocket wheel. This condition was discovered to exist after the accident in question. When in such condition the sprocket wheel would revolve but it would not catch the chain and carry it around. This condition would cause the chain to become choked or clogged. There was a plank walk-way to the left of the conveyor trough which was used for the purpose of going up there to unchoke the conveyor chain. It was customary to go up there on this plank run-way and unchoke the chain before the machinery stopped.

On the morning of the injury, Scott's superior told him that they were short of fuel and to shove along all the fuel possible. Scott told his superior about the defects in the conveyor trough and said that he did not know whether he could do as required until the defects were repaired. His superior said, "Watch it close today, we have to have fuel today, and keep it going and I will have it fixed tomorrow." Scott told him that he would do his best. Early in the afternoon Scott was informed that the conveyor trough had become choked with accumulated fuel, and he went up the walk-way to see about it. It is fairly inferable from the evidence that he went to the end of the walk-way, which was about two feet from the sprocket wheel, and found that a plank three or four feet long had in some way been carried up the conveyor chain and fastened itself into the sprocket wheel, pushing the conveyor chain off of it so that it did not revolve and thereby allowed particles of fuel to accumulate. While endeavoring to unchoke the conveyor chain, Scott had evidently slipped or fallen to one side, and his clothes became entangled in a set screw which was attached to the collar on a revolving line shaft near by. In any event, when his body was found, his clothes were attached to the set screw and had become wrapped around the revolving line shaft, thereby causing his death. The set screw was attached to a collar on the revolving line shaft to the left of and near to the sprocket wheel to which the conveyor chain was attached and around which it revolved. No one was present when Scott was killed, but it is fairly inferable that he slipped and fell while unchoking the sprocket wheel, and in falling his clothes became fastened to the set screw and wrapped around the revolving line shaft.

From the judgment rendered against it the defendant has duly prosecuted this appeal.

*T. D. Wynne, W. P. Feazel* and *W. R. Donham,* for appellant.

1. The appellant's request for peremptory instruction should have been given. The court's conclusion on

former appeal that the issues of alleged negligence of the appellee and the assumption of risk and contributory negligence on the part of the deceased should have been sent to the jury under appropriate instructions, is not the law of the case on this appeal, because the facts are different. 138 Ark. 267. If either of these questions ceases, under the present record, to be jury questions, then a verdict should have been directed by the defendant.

On the question of assumed risk, see 56 Ark. 216; 57 *Id.* 76; 58 *Id.* 125; 65 *Id.* 98; 68 *Id.* 316; 77 *Id.* 367; 81 *Id.* 343; 85 *Id.* 600; 87 *Id.* 44; 89 *Id.* 50; 90 *Id.* 387; 92 *Id.* 102; 93 *Id.* 140; 95 *Id.* 560; *Id.* 136; 98 *Id.* 202; 99 *Id.* 377; 100 *Id.* 462; *Id.* 156; 101 *Id.* 537; *Id.* 197; 104 *Id.* 489; 105 *Id.* 434; 107 *Id.* 528; *Id.* 341; 108 *Id.* 483; 113 *Id.* 359; 115 *Id.* 350; 116 *Id.* 56; 118 *Id.* 304; 119 *Id.* 477; 112 *Id.* 552; *Id.* 272; 133 *Id.* 336; 140 *Id.* 135; 141 *Id.* 438; 143 *Id.* 390; 147 *Id.* 95; 232 S. W. (Ark.) 8.

2. The court erred in submitting to the jury, in plaintiff's instruction No. 1, a double issue of negligence *i. e.,* negligence of the defendant and negligence of defendant's servants, whereas, the testimony justified the submission of only one issue of negligence. 148 Ark. 500.

3. When, as in this case, the servant is required to make his own place of work safe, the rule as to the duty of the master to exercise ordinary care to furnish a reasonably safe place to work is not applicable, and the court erred in submitting that question to the jury. Every danger about this place of work was open and obvious, and deceased contracted with reference thereto. It is the duty of the master to exercise ordinary care to discover and repair latent defects only.

The court's instruction on this subject in effect assumes that the defects and dangers were latent. This was erroneous. 14 Ark. 286; 93 *Id.* 29; 14 R. C. L. 738.

4. The defects in the lining of the conveyor trough did not cause or contribute to the injury. It was error therefore to base an instruction on such defects,—upon a

promise to repair such defects. 101 Ark. 537; 141 *Id.* 438. See also 77 Ark. 367; 136 *Id.* 602.

*D. D. Glover* and *Andrew I. Roland,* for appellees.

The law of the case was announced on the former appeal. There is no material difference in the facts developed in the last trial from those developed and in the record on former appeal, and the case was sent to the jury under proper instructions.

This court has said that the servant has a right to rely upon the superior knowledge of the master and to proceed upon the assurance that it is safe to do so, and that the defects will be repaired. 84 Ark. 78. For correct rule, as we view it, see 1 Shearman & Redfield on Negligence, § 215. See also 88 Ark. 34.

Even though a servant knows of a particular risk, if he makes complaint thereof to his foreman, as was done in this case, who promised to repair the defect, and the servant, relying on that promise, continues his work, it is a question for the jury to say whether he assumed the risk, unless the danger was so obvious and imminent that a person of ordinary prudence would not have continued in the work. 86 Ark. 508; 97 *Id.* 347; 102 *Id.* 646; 105 *Id.* 353.

Deceased at the time of his death was occupying the only position he could have occupied to obey the commands of his master; still, if he adopted a less safe of two ways to do the work, the court would not be justified in declaring as a matter of law that he was negligent or assumed the risk, in adopting the less safe way, unless it was so dangerous that a person of ordinary prudence would not have undertaken it. 111 Ark. 9. See also 123 Ark. 119; 90 *Id.* 226; 1 Labatt, Master & Servant, §§ 7-14; 91 Ark. 389; 87 *Id.* 321; 92 *Id.* 502; 88 *Id.* 549; *Id.* 29; 91 *Id.* 102; 92 *Id.* 554; 95 *Id.* 291.

Where the facts are such with respect to the negligence of the parties that reasonable minds might differ, the case should go to the jury. 79 Ark. 53; 86 *Id.* 244; 87 *Id.* 321.

The set screw could not be seen when the line shaft was running. It was a question for the jury whether deceased knew and appreciated the danger. 124 Ark. 58; 132 *Id.* 385; 134 *Id.* 136, 139; 77 *Id.* 458; 86 *Id.* 325.

There was no duty of inspection resting on the deceased, neither is it shown by uncontradicted evidence that he had actual knowledge of the set screw. 90 Ark. 564; 141 *Id.* 386.

HART, J. (after stating the facts). The effect of our opinion on the former appeal was to hold that the use of an uncovered set screw upon the collar on an elevated line shaft was not negligence, as a matter of law, under the conditions set out in the statement of facts, but that the question of negligence in this respect was for the jury. Although the use of set screws and projecting bolts upon line shafts is generally held not to be negligence as a matter of law, it does not follow that it would not be negligence to use them without being guarded or covered where, by their proximity to the floor and other places of work, workmen would be subjected to unusual danger. If the accident happened as claimed by counsel for the plaintiff—that is, if in trying to pull out a plank from the cog wheel, or from unclogging the conveyor chain while standing near the uncovered or unprotected set screw, Scott slipped or lost his balance, and, while falling his clothing caught in the set screw and wound around the line shaft and thereby killed him, the case falls within that line of cases in which it has generally been held that, where an employee is injured by unguarded machinery with which he comes in contact by reason of some such cause as leaning over, slipping or losing his balance, he cannot be held to have assumed the risk as a matter of law. The defective condition of the conveyor trough and the consequent clogging of the conveyor chain is only important as accounting for Scott's fall. It may be stated in this connection that, notwithstanding Scott was a mill foreman, he was doing the work of another under the command of his su-

perior at the time he was killed, and his rights were practically the same as those of any other workman who possessed the same knowledge and skill in the premises as he did.

To constitute actionable negligence, there must be negligence and injury resulting as the proximate cause of it. Proximate cause has been defined as a cause from which a person of ordinary experience and sagacity could foresee that the result might probably ensue.

It is true that, according to the theory of the plaintiff and the evidence introduced to support it, Scott was injured by falling from the walk-way while engaged in unclogging the conveyor chain which had become clogged on account of the accumulation of particles of wood by reason of the defect in the lining of the conveyor trough, nevertheless it is conceded, or in any event it may be fairly assumed from the evidence, that the set screw caught his clothes and caused them to be wound around the revolving shaft, and thereby killed him. It does not follow that which caused Scott to fall was the proximate cause of his injury. The set screw would have caused the injury whether or not the defendant had been guilty of negligence with reference to the defective condition of the conveyor trough. This alleged defect was only a condition, and was not the proximate cause of the accident which resulted in Scott's death. The set screw would have produced the same injury if Scott had fallen because of the slippery condition of the walk-way or as the result of his own carelessness while going along the walk-way to see if the conveyor trough had become clogged. Hence it is apparent that if the set screw had been covered Scott might not have been killed, and that if it was left uncovered he would be injured if he fell against it while the line shaft was revolving. Hence the negligence of the defendant in failing to cover the set screw, if the jury should find that it was negligent in this respect, was the direct and proximate cause of the injury, and the clogging of the conveyor chain was only a condition, and as such was not the efficient cause of the injury.

. Of course the opinion on the former appeal is the law of the case and must govern here. We have stated, however, the effect of that opinion as we understand it from the language used, without quoting at length from it. Therefore, we are of the opinion that the instructions of the court at the instance of the plaintiff are errone-ous. The instruction of the court should have only sub-mitted to the jury the negligence of the defendant in leaving an exposed set screw under the surrounding conditions, and should not have left to the jury the question of negligence of the defendant in allowing blocks or particles of wood to have accumulated on the conveyor chain and thereby clogging it by reason of the defective condition of the lining in the conveyor trough. If the alleged defect in this respect was not the direct and proximate cause of the injury, it necessarily fol-lows that the court erred in submitting it to the jury as a question of negligence on account of which the plaintiff might recover.

In instruction No. 1 as well as other instructions given at the request of the plaintiff, the court submitted to the jury, in general terms, the negligence of the de-fendant on all the grounds alleged in his complaint. The allegations of negligence with regard to the defective condition of the lining of the conveyor trough was one of the allegations of negligence set out in the complaint. Then, too, in instruction No. 15 this allegation of negli-gence was expressly submitted to the jury, and the jury was told that, if such negligence contributed to the de-cedent's death, it should take this into consideration in arriving at its verdict.

On the question of negligence, as we have already seen, the trial court could only submit that which was the direct and proximate cause of the accident, and it was error to submit other alleged grounds as a basis for the jury to find for the plaintiff. The instruction should have limited the jury upon the subject of negligence to that which was the direct and proximate cause of the

injury, and, not having done so, the trial court committed prejudicial error, which calls for a reversal of the judgment.

It is insisted by counsel for the defendant that the undisputed evidence on the present appeal shows that Scott had helped to repair the collar in which the set screw in question was placed, and that he necessarily knew of its existence. Hence they claim that the case should not be remanded for a new trial, but that the cause of action should be dismissed. We do not agree with counsel in this contention. As we have already seen, the question of whether the use of the uncovered set screw, under the facts and circumstances in the case, constituted negligence on the part of the defendant was one for the jury, and this would not be changed by the fact that Scott knew that the set screw was there. That fact would be for the jury to consider on the question of the assumption of risks, which should be still left to the jury.

Therefore, we are of the opinion that the judgment must be reversed, and that the cause should be remanded for a new trial. It is so ordered.