EUREKA OIL COMPANY v. MOONEY.

Opinion delivered April 6, 1925.

1. MASTER AND SERVANT—APPLICATION OF RES IPSA LOQUITUR DOCTRINE.—In an action for the death of an employee, whose duty it was to go out on a plank over a pool of oil to clean the intake pipe, where the proof was merely that his body was found in the pool, there being no eye witnesses, *held* that the doctrine of *res ipsa loquitur* is not applicable, and the burden was on the plaintiff to show such facts and circumstances as tend to show, not as a matter of speculation or conjecture, but as an inference reasonably deducible from the testimony, that defendant had been guilty of negligence which was the proximate cause of deceased's death.

2. MASTER AND SERVANT—DEATH OF SERVANT—JURY QUESTION.—Evidence that the death of plaintiff's decedent resulted from defendant's negligence, *held* sufficient to go to the jury.

3. MASTER AND SERVANT—ASSUMED RISK—INSTRUCTION.—An instruction that, though a servant assumes the risks ordinarily incident to his employment, he does not assume risks of injury from the negligence of the master unless he knows of such negligence and appreciates the danger arising therefrom, *held* objectionable as relieving the servant of the risk of obvious danger.

4. DEATH—PECUNIARY LOSS.—In an action for the death of a minor servant, evidence *held* to show damages to his parent by way of pecuniary loss, but no damages for deceased's conscious pain and suffering.

Appeal from Saline Circuit Court; *Thomas E. Toler*, Judge; reversed.

Powell, Smead & Knox, for appellant.

J. W. Westbrook and W. R. Donham, for appellee.

SMITH, J. Cleo Mooney, appellee's intestate, was employed as a pumper at one of the oil wells of the appellant company, in Union County. A dam had been constructed by appellant across a ravine, and, as the oil flowed from the well, it ran down this ravine to a dam and formed a pool. The pool was about thirty feet across at the lower end, and was about two feet deep.

A plank about seven or eight feet long was used as a walkway from the dam out into the pool to an intake pipe of a suction pump. One end of the plank rested on the dam and the other rested on a cross-piece nailed to

two stobs which had been driven into the ground in the pool, and about three feet from the dam. The plank was about a foot wide, and was not fastened at either end, and extended out over the cross-piece on which it rested out into the pool. There was testimony that the plank was loose and unsteady, and that, if one stepped beyond the cross-piece, the plank would tilt.

The pool filled about every thirty minutes, and, when filled, the plank was about two inches above the oil. The intake pipe was down in the pool, covered with oil. It frequently became clogged with silt and debris, and therefore required the constant attention of the pumper. It was necessary to keep it clean, so that the pump would be kept working, otherwise the oil would flow over the dam. The well did not flow constantly, and therefore had to be swabbed. It would then throw oil about twenty feet high and continue flowing for two or three hours, when it had to be swabbed again.

Appellee's intestate was a boy eighteen years old, but he was as large as a full-grown man. He was employed one day, and continued to work during the night following, and negligence is predicated upon the failure of the appellant company to warn him of the dangers incident to the employment, it being alleged that deceased was inexperienced in the work in which he was engaged.

Mr. Mooney, the appellee, who was deceased's father, testified that he was at the pool about ten o'clock P. M. before deceased was found dead in the pool at five o'clock the next morning. Mr. Mooney testified that, just before he left the place where his son was at work, he saw his son go out on the plank walkway and get down on his hands and knees to clean the suction or intake pipe, and that, as his son raised up and started back to the dam, he staggered and came near falling, and at that time he could smell the fumes of the oil.

About midnight deceased went to another oil well where some workmen were engaged and borrowed a hammer and cold chisel, presumably for the purpose of

doing some work on the suction pump. No witness testified that deceased was seen alive after that time.

The next morning about five o'clock Mr. Mooney went down to the pool, and, not seeing his son, reported the fact to appellant's foreman, and the two went back to the pool to search for the body. Mr. Mooney walked out on the walkway and felt around in the oil with a stick, and soon found the body of his son, his feet being next to the walkway and his head farther out in the pool.

Mr. Mooney brought suit, as the administrator of his son's estate, to recover damages for the pain and suffering endured by his son, and also for the loss of contributions made to him by his son out of his wages. There was a verdict for the estate in the sum of $500 and for the father for $2,500, and judgment was rendered accordingly.

For the reversal of the judgment it is insisted, (1), that there is no proof that the death of appellee's decedent was caused by any negligence of appellant; (2), that, even if appellee's theory of the cause of death was established, decedent assumed the risk of the danger which resulted in his death; (3), that there was no proof of damage; and (4), that error was committed in instructing the jury.

In support of its first assignment of error appellant insists that the cause of death is purely a matter of speculation and conjecture, and that the testimony did not warrant the submission of the question of its negligence to the jury.

Appellee's first answer to this insistence is that the doctrine of *res ipsa loquitur* applies, and that, under the case made, the burden was on appellant to account for the injury and to excuse the presumption of its negligence.

It may be said that the case was not submitted to the jury on the theory that the doctrine of *res ipsa loquitur* applies, and we do not think that it does apply. *Arkansas Light & Power Co.* v. *Jackson*, 166 Ark. 633, and cases there cited. The burden was therefore on appellee to

show such facts and circumstances as that—not as a matter of speculation or conjecture but as an inference fairly and reasonably deducible from the testimony—appellant had been guilty of some negligence which was the proximate cause of deceased's death. It is a close question whether the evidence is legally sufficient for this purpose or not, but we have concluded that the testimony was sufficient to send the question of appellant's negligence being the proximate cause of deceased's death to the jury.

Deceased was eighteen years old, and he lost his life before he had performed one full day's labor. He had previously worked in the oil fields, but he had never before been engaged in work similar to that in which he was employed at the time of his death. There was testimony that, as the oil came from the well, it emitted dangerous fumes, which the pumper had to inhale while clearing the intake pipe, since, while so engaged, he had to get down on his hands and knees on the plank walkway to reach down in the pool, and in such manner as to cause his face to come almost in contact with the oil. The testimony on the part of the appellant was to the effect that, while the oil did emit fumes when it first came out of the ground, these fumes were immediately dissipated and no fumes were thrown off by the oil in the pool.

It is the theory of appellant that deceased was murdered and thrown into the pool of oil for the purpose, possibly, of robbery. This was the theory of the case first accepted, and a man suspected of the crime was arrested, but the charge was dismissed, and the party suspected testified as a witness for appellee at the trial.

In support of the theory that the deceased was robbed, the testimony of an X-ray expert and a physician was offered, to the effect that deceased's skull had been fractured and no oil was found in his lungs. In refutation of this theory, another physician testified that, in his opinion, deceased's skull was not fractured, although he admitted that his examination was not sufficiently

thorough for him to be sure. Deceased had on his person, when found, a watch and $25.33 in money.

For the reversal of the judgment it is first insisted that there is no proof that decedent's death was caused by any negligence of appellant, and that, if appellee's theory of the cause of death was established, decedent assumed the risk.

As we have said, the case is a close one on the facts whether the testimony is legally sufficient to support the finding that decedent's death was caused by any negligence on the part of appellant. As was said in the case of *St. L. I. M. & S. R. Co.* v. *Hempfling,* 107 Ark. 476, the jury have no right to guess, without proof, what the probable cause of decedent's death was, but it was there also said: ''The law is well settled that, where there are no eye-witnesses to the injury and the cause thereof is not established by affirmative or direct proof, then all the facts established by the circumstances must be such as to justify an inference on the part of the jury that the negligent conditions alleged produced the injury complained of. Where such is the case, the jury are not left in the domain of speculation, but they have circumstances upon which, as reasonable minds, they may ground their conclusions. Negligence that is the proximate cause may be shown by circumstantial evidence as well as by direct proof.''

Viewed in the light most favorable to appellee, the testimony may be further summarized as follows: Deceased was only eighteen years old, and had only one day's experience in the work he was engaged to do by appellant. This work brought his face in close contact with the pool of oil, which may have emitted fumes having a deleterious effect, of which deceased was not warned, and which rendered more dangerous the unfastened plank on which his duties were performed. There was no testimony that he had quarreled with any-one, and he was not robbed, for his money and watch were on his person. His body was found at the place where his duties would have called him. So we have

concluded that it was not mere speculation or conjecture for the jury to have found that deceased came to his death while engaged in the discharge of his employment, and that he had not been given the warning which a boy of deceased's age and inexperience should have had. Appellant admits that no warning was given, but contends that none was necessary.

These were, of course, disputed questions of fact. The testimony on behalf of appellant was to the effect that no fumes were exhaled from the oil pool. That deceased was in appearance and in experience a full-grown man. That there were no dangers incident to the employment which were not open and obvious, if the duties of the employment were discharged with any degree of care. That the walk extended only three feet in the pool, and, if there were any dangers, they were so simple, open and obvious that any one would see and appreciate them.

Over appellant's objection the court gave an instruction numbered 2, reading as follows: "You are instructed that, while a servant assumes all the risk of injury ordinarily incident to the employment in which he is engaged, he does not assume the risk of injury from the negligence of the master for whom he works, unless he knows of such negligence, and appreciates the danger arising therefrom."

Specific objections were made to this instruction on the grounds (1), that it failed to require deceased to exercise ordinary care for his own safety; (2), that it relieved deceased of the risks that were open and obvious.

As to the first objection it may be said that other instructions fully and correctly declared the law in regard to the duty to exercise ordinary care for one's own safety, and the instruction does not purport to deal with that issue. But we think the second objection was well taken, under the facts of this case.

We have no way of knowing on what charge of negligence the jury's verdict was based, but, under the instruction set out above, deceased was relieved from

the assumption of its risk, whatever it may have been, unless there was a finding that he was aware of such negligence and appreciated the danger arising therefrom.

The law in regard to the duty of the master to warn an inexperienced servant, and in regard to the assumption of risks by such servants, is nowhere . stated any clearer than in the case of *Emma Cotton Seed Co.* v. *Hale,* 56 Ark. 216, where it was said: "If, however, the servant, by reason of his youth and inexperience, is not aware of or does not appreciate the danger incident to the work he is employed to do or to the place he is engaged to occupy, he does not assume the risks of his employment until the master apprises him of the dangers. It would be a breach of duty on the part of the master to expose a servant of this character, even with his consent, to such dangers, without first giving him such instructions and caution as would, in the judgment of men of ordinary minds, understanding and prudence, be sufficient to enable him to appreciate the dangers, and the necessity for the exercise of due care and caution, and to do the work safely, with proper care, on his part. For a breach of his duty the master is bound to indemnify such servant against the consequences. He cannot escape this liability by delegating the duty to instruct or inform to another person. But, if such servant receives the information and caution from any source, and accepts the place and undertakes the work, he assumes the risks ordinarily incident thereto, and cannot thereafter recover for injuries because the place was not safe. As to such work or place and its dangers, he would then be placed on the footing of an adult, and could not, on account of infancy, be relieved of the consequences of such risks." ·

The jury may here have found only that appellant was negligent in not having a safer walkway, and, if this were true, the instruction is erroneous because it permits the jury to find that deceased had not assumed the risk of that danger unless it was also found that he knew and appreciated that danger, whereas such danger as existed on that account was obvious and patent to a person of the

age and possessing the intelligence which deceased was shown to possess. Nothing could be simpler than the danger of falling off a plank, and it was therefore error to submit to the jury the question whether deceased had assumed that risk.

In the case of *Royal* v. *White Oil Corporation,* 160 Ark. 467, the plaintiff sued to recover damages for personal injuries received in consequence of the slipping of a plank on which he was standing while engaged in looking in a water tank to see if it was full of water. A verdict was directed for the defendant, and, in affirming that judgment, we said: "The duty of the master to exercise ordinary care to provide reasonably safe tools and appliances for his servants has no application where the tools are common tools in ordinary use and the servant possesses ordinary intelligence and knowledge of their use and construction. *Railway Company* v. *Kelton,* 55 Ark. 483; *Marcum* v. *Three States Lbr. Co.,* 88 Ark. 28; and *Fordyce Lumber Co.* v. *Lynn,* 108 Ark. 377."

It is true deceased had only been employed one day, but the danger from the work—such as there was—was immediately obvious and patent, unless, indeed, this danger was enhanced by the fumes from the oil. Any other danger was so obvious and patent that it was error to submit the question of deceased's knowledge and appreciation of it.

It is insisted that there was no testimony upon which to base the finding that appellant had sustained a loss of contributions from the deceased, his son. But we think this question was properly submitted to the jury. Appellee testified that deceased quit school to earn money to assist in defraying the expenses of his mother, who was an invalid, and that deceased gave appellee all of his earnings, which amounted to $5 per day, except only so much as was necessary to defray deceased's personal expenses.

Appellant also insists that there was no testimony upon which to base the verdict for conscious pain and suffering, and we think this assignment is well taken.

As we have said, the pool of oil was only two feet deep, and deceased was only a few feet from the dam, and, unless he was asphyxiated or sustained a fractured skull by striking his head on the walkway or one of the stobs supporting it, it is difficult to surmise how he died. But, even though he drowned, there was no testimony that he suffered consciously before expiring, as was the case in *St. L. I. M. & S. R. Co.* v. *Stamps*, 84 Ark. 241, where a judgment was sustained for pain and suffering in favor of the estate of a man who died by drowning.

For the error indicated in instruction numbered 2, and in submitting the question of the right to recover for conscious pain and suffering, the judgment is reversed, and the cause will be remanded for a new trial.