EUREKA OIL COMPANY *v.* MOONEY.

Opinion delivered March 14, 1927.

1. MASTER AND SERVANT—PROPRIETY OF DIRECTED VERDICT.—In an action for death of an employee, whose duty it was to go out on a plank over a pool of oil and clean an intake, and whose body was found in the pool, it was not error, in view of a conflict in the evidence, to refuse to direct a verdict for defendant.

2. MASTER AND SERVANT—FAILURE TO WARN—INSTRUCTION.—In an action for death of an employee found in an oil pool, an instruction that, after finding that deceased was youthful and inexperienced, he did not assume the risk of danger from fumes arising from the pool unless he knew of the same and appreciated the danger arising therefrom, or unless he was warned and instructed of such danger, was not error, since it only meant to tell the jury that, when the evidence disclosed that the employee was young and inexperienced and did not appreciate the danger, he did not assume the risk unless warned.

3. EVIDENCE—RES GESTAE.—In an action for death of an employee, whose duty it was to go out on a plank over a pool of oil to clean the intake pipe, and whose body was found in the pool, testimony that deceased, a few hours previously, explained his actions in staggering after cleaning the pipe by saying that he could smell gas, was not competent as part of *res gestae.*

4.    MASTER AND SERVANT—NEGLIGENCE—EVIDENCE.—In an action for the death of an employee, whose duty it was to go on a plank over a pool of oil to clean an intake pipe, and whose body was found in the pool, testimony that deceased, on one occasion, on arising from cleaning the pipe, staggered and almost fell from the plank, was competent testimony entitling the jury to draw reasonable inferences under the circumstances.

5.    TRIAL—GENERAL OBJECTION TO STATEMENT.—Overruling of a general objection to the entire statement of a witness was not error where part of his testimony was competent.

Appeal from Saline Circuit Court; *Thomas E. Toler,* Judge; affirmed.

*Powell, Smead & Knox,* for appellant.

*J. W. Westbrook* and *W. R. Donham,* for appellee.

KIRBY, J. This is the second appeal of this case, a statement of which can be found in the report of opinion on first appeal in 168 Ark. 479, 271 S. W. 321, which is the law of the case, of course, and will control here, the facts on this trial being substantially the same as on the former appeal. *Wisconsin-Arkansas Lumber Co.* v. *Scott,* 153 Ark. 65, 239 S. W. 391; *Henry Wrape Co.* v. *Barrentine,* 138 Ark. 267, 211 S. W. 366.

The court, in reversing the case, relative to an erroneous instruction on assumed risk, said: "It is true deceased had only been employed one day, but the danger from the work—such as there was—was immediately obvious and patent, unless, indeed, this danger was enhanced by the fumes from the oil. Any other danger was so obvious and patent that it was error to submit the question of deceased's knowledge and appreciation of it," and also held that the testimony was sufficient to send the question of appellant's negligence being the proximate cause of deceased's death to the jury. It is insisted for reversal now that the court erred in admitting hearsay testimony, and in not directing a verdict for defendant. The case was tried by agreement on the same record as made on the first trial, some additional witnesses being introduced.

A new witness for plaintiff testified that he had lived around the oil fields of Camden, El Dorado and Smack-

over about four years; had done practically all kinds of work in an oil field; had worked around oil wells and oil fumes. He stated that there are fumes from the oil when it comes in from flowing wells that can be detected. Some men can stand to inhale the fumes and others cannot. Inhaling them produces shortness of breath to such an extent that, after a little while, they cannot stand up. The fumes are strongest right after the well is brought in, and continue strong so long as the well is flowing; had known two or three people to become overcome from gas from an open well flowing open in the air. It made them sick, and they just could not stand it. One of the wells where this occurred was a swabber, and the other an open well, both in the open in the El Dorado field. A swabber is a well where the gas pressure is not strong enough to force the oil out. It is swabbed a few times, and the gas pressure is then strong enough to cause the oil to flow. Said that persons he knew to have been overcome by fumes were not in actual contact with the oil, but some distance away, fifteen or twenty feet from the flow. The fumes make them sick, and some cannot stand it even in an open earthen storage.

Other witnesses testified that this well had to be swabbed; that the oil would go to the top of the derrick, fall back to the ground, and run down to the dam across the ravine, 200 feet away; that the pool was two feet deep, and would overflow in about thirty minutes, if the suction pipe was not kept in continuous operation. The suction box or intake was about 2½ feet from the dam, and a plank 12 inches wide and about 6 feet long projected out from the dam, resting on a cross-piece nailed to two stobs, the end of the plank being securely buried in the side of the dam. He and other witnesses stated there would not be any fumes from the oil which could be smelled, but there would be no dangerous fumes, as it had flowed that far in the open air, fumes escaping when exposed to the air; that there were no fumes from the oil the day deceased was killed.

This witness stated that he was out on the plank several times the day the boy was killed, and found it perfectly solid; that it was solid the next day, one end of the plank being buried in the levee or dam and the other on the cross-piece nailed to the stobs, and that this was the customary way of preparing a method to unstop an intake pipe, the only way it could be done.

Other witnesses testified that no dangerous gas fumes would arise from oil in an open container or pool like this one that had been exposed to the air in flowing to the top of the derrick and falling to earth on down to the dam; that sufficient fumes would not arise from it to overcome one, or cause him to lose his balance and fall from the plank, even though he had got down on his hands and knees and reached down into the oil to clean the pipe, bringing his face in close proximity with the oil. Some of these witnesses stated that the oil in the south field, where this pool is located, gave off no poison gas fumes at all.

Appellant's father, and administrator of his son's estate, testified as on the first trial, and over like objections as to the competency of the testimony, that his son had only been working for the company one day before his death, although he had worked for the natural gas company before going to work for the defendant; that his son went down and started the pump, and continued operating it until about 10 o'clock. The foreman came along and asked him how he was getting along, and he replied, "All right." He then went out on the plank while the foreman was talking to witness, and the foreman passed on. The boy got down on his knees and was reaching down into the oil, cleaning out the suction-box on the pipe in the pool; that, when he got up, he came staggering like and nearly fell (Objection).

Objection being overruled, witness stated: "Anyway, he went out on the plank and cleaned this suction-box out, and then he straightened up, and I noticed him kind of staggering—nearly fell off of the plank—and

I asked him what was the matter, and he said he could smell the gas.'' This testimony was all objected to.

Witness, about 5 o'clock next morning, got up, and deceased had not come in; went to look for him; the pool was full of oil; noticed where deceased had eaten his lunch on some boards, and some one saying he must have fallen into the pool; took a stick and reached down into the oil, and discovered the body. The feet were towards the plank, the head out in the pool, lying on its face, as nearly as the witness could tell. His watch and $25.33 were in his pockets.

There was testimony tending to show also that the boy had been murdered, and that his skull was fractured, the latter fact being established by a post-mortem examination. One physician thought the line in the X-ray picture might not have been a fracture, and could have been a suture.

Appellant insists that, since the court held on the former appeal that the deceased assumed all risk of danger from his work, it being immediately and obviously patent, unless it was enhanced from the fumes from the oil, and that the undisputed testimony shows that no dangerous fumes would or could arise from such oil flowing into an open container like this pool, the court should have instructed a verdict in its favor, and especially that the court erred in giving instruction No. 3, relative to assumed risk.

It will suffice to say, however, that the testimony is not undisputed, one witness having sworn to the contrary, although the great preponderance of the evidence tends to show that no dangerous gas fumes would or could arise from the oil in the pool in which deceased was found dead, after it flowed out of the well and down to the dam; all poisonous fumes having escaped and been dissipated in the air. The court did not err therefore in refusing to direct a verdict, the testimony not being undisputed.

This instruction tells the jury that, after they found that deceased was youthful and inexperienced, he did not

assume the risk of danger from fumes arising from the oil, "unless he knew of same and appreciated the danger arising therefrom, or unless he was warned and instructed of such danger. You are further instructed that, under such circumstances, the burden of showing such warning or appreciation of the danger incident to such fumes is on the defendant."

This instruction only meant to tell the jury that, when the evidence disclosed that the servant was young and inexperienced in the particular service, and did not fully realize and appreciate the danger, he did not assume the risk, unless warned thereof, and, under the circumstances, no error was committed in giving it.

It is next insisted that the court erred in admitting the testimony of deceased's father, over objection of defendant, as follows: "Anyway, he went out on the plank and cleaned this suction-box out, and then he straightened up, and I noticed him kind of staggering—nearly fell off of the plank—and I asked him what was the matter, and he said he could smell the gas."

This statement of deceased's answer to his father explaining his action in staggering in rising after cleaning out the suction-box, "He could smell the gas," was not incident to the cause of deceased's death some hours thereafter, and could be no part of the *res gestae.* It did not attend and was in no wise immediately connected with any act causing the death of the deceased some hours thereafter. It had no connection with that fact at all, and could not have been a spontaneous declaration arising out of or connected with it. It was hearsay, and might have been prejudicial.

The statement of witness, however, that he had, some hours earlier, seen deceased, after rising from cleaning the suction-box, stagger and almost fall from the plank, was competent testimony, from which the jury were entitled to draw any reasonable inference under the circumstances, and, since the whole of the witness' statement was objected to, and part of it was competent, and no special objection was made to that part of same being

incompetent as hearsay, the court committed no error in overruling the general objection to the entire statement. *St. L. I. M. & S. R. Co.* v. *Stroud,* 67 Ark. 112, 56 S. W. 870; *Redmon* v. *Hudson,* 124 Ark. 26, 186 S. W. 312.

This is a doubtful case of liability, so far as the proof of negligence is concerned, but, having already held that there was sufficient testimony to send it to the jury, and the jury having found again, upon correct instructions and conflicting testimony, in appellee's favor, and the record being free from prejudicial error, the judgment must be affirmed. It is so ordered.

MEHAFFY, J., not participating.