ST. LOUIS & SAN FRANCISCO RAILWAY COMPANY v. ADAMS.

Opinion delivered June 28, 1920.

1. APPEAL AND ERROR—FINDING ON FORMER APPEAL.—Where, on a former appeal, this court held that it was a question for the jury whether plaintiff's intestate was guilty of contributory negligence, and there was no material change in the facts on the second trial, the trial court properly refused to direct a verdict for the defendant on this issue.

2. RAILROADS—DUTY TO SIGNAL—INSTRUCTION.—In an action for the death of plaintiff's intestate alleged to have been caused by the negligence of defendant's trainmen, it was not error to refuse to instruct that if intestate heard the train whistle for the station no other signals were required, since the duty to signal was a continuing one.

3. TRIAL—REPETITION OF INSTRUCTIONS.—It was not error to refuse requested instructions fully covered by instructions given.

4. RAILROADS—DUTY TO LOOK AND LISTEN—INSTRUCTION.—An instruction that it was the duty of a driver of a team, in attempting to cross a railroad track, to look and listen and to ascertain if a train was approaching and otherwise to use ordinary care to prevent his being injured, *held* sufficiently to state the duty to look and listen and to stop for that purpose if necessary.

5.   Rᴀɪʟʀᴏᴀᴅs—ᴄᴏɴᴛʀɪʙᴜᴛᴏʀʏ ɴᴇɢʟɪɢᴇɴᴄᴇ—sᴜFFɪᴄɪᴇɴᴄʏ ᴏF ᴇᴠɪᴅᴇɴᴄᴇ. Proof that plaintiff's intestate, killed in a collision with defendant's train, looked first to the east when if he had first looked to the west he might have seen defendant's train approaching, did not of itself establish contributory negligence where intestate had as much reason to apprehend danger from one direction as from the other.

Appeal from Lawrence Circuit Court, Eastern District; *Dene H. Coleman,* Judge; affirmed.

*W. F. Evans, W. J. Orr* and *Ponder & Gibson,* for appellant.

1. The law of this case is well settled and properly by the former appeal. 206 S. W. 45. A traveler crossing a railroad track must "look and listen." 101 Ark. 321; 117 *Id.* 464; 99 *Id.* 170; 16 S. W. 169. The evidence on the second trial is materially different from that on the first trial.

2. The court erred in its instructions given and refused. 84 Ark. 270. The evidence supported the instructions refused for defendant and it was error to refuse them.

*David L. King,* for appellee.

1. The law of this case is settled. 136 Ark. 1; 206 S. W. 43. The testimony (set out in full) makes out a complete case for the jury and justifies the verdict. The train was running at excessive speed, and the bell was not rung nor whistle blown as required by law, and negligence is conceded. Billingsley stopped, looked and listened; did his whole duty. 96 Ark. 638; 66 Fed. 502; 124 Ark. 413; 137 *Id.* 217; 97 *Id.* 160; 101 *Id.* 321. The question of due care on Billingsley's part is settled by the jury, as they were properly instructed. 20 Ann. Cases 1200; 124 Ark. 417; 92 N. E. 337.

The instructions are not abstracted, and hence are presumed correct. 121 Ark. 274. But there was no error in them. 11 L. R. A. 364; 74 N. E. 34; R. C. L. 100; Ann. Cases 1913 A, 49; 92 N. E. 337; 44 L. R. A. 815. Correct instructions should have been asked, and, as ap-

pellant did not ask them, it can not complain now. 117 Ark. 579; 97 *Id.* 180; 74 *Id.* 444; 94 *Id.* 6; 120 *Id.* 497. But if error it was not prejudicial. 111 Ark. 550. The evidence shows that Billingsley was guilty of no negligence, and the verdict is very small.

HUMPHREYS, J.   Appellee, in her own right and as guardian of Troy L. Billingsley, her minor child, instituted suit against appellant in the Sharp Circuit Court, to recover damages for the death of her husband, caused by a collision, at a public crossing in the town of Hardy, between one of defendant's passenger trains and her husband's team and wagon, which he was driving, through the alleged negligence of appellant's employees in operating the train.

Appellant filed answer, denying negligence in the operation of said train, and alleging that the injury occurred through the contributory negligence of appellee's husband, Louis Billingsley.

On change of venue, the cause was tried in the Eastern District of Lawrence County, which resulted in a directed verdict in favor of appellant and a judgment in conformity thereto, dismissing appellee's complaint.

From that judgment, an appeal was duly prosecuted to this court, under the style of *Billingsley* v. *St. Louis & San Francisco Railway Company*, reported in 136 Ark. 1. On appeal this court ruled that the circuit court erred in holding the undisputed evidence, when viewed in its most favorable light to this appellee, showed that, as a matter of law, the injury and death of her husband resulted from his contributory negligence, reversed the judgment and remanded the cause for a new trial.

Upon remand, the cause was submitted upon the pleadings, evidence and instructions of the court, which resulted in a verdict for appellee in her own behalf in the sum of $750 and in behalf of her minor child for $5,000. A judgment was rendered in accordance with the verdict, from which verdict and judgment an appeal has been duly prosecuted to this court.

On the former appeal, the facts developed on the first trial were elaborately stated. It is insisted that the facts developed upon retrial differed in two material respects from the facts stated by this court in the original appeal.

First. On the former appeal, it was stated that "There was a freight train on the passing track east of the crossing, and the passenger train was coming in from the west." The original evidence justified that inference. The evidence in the instant case makes it clear that the freight train, referred to as standing on the passing track east of the crossing, had moved, before the accident, from the passing track to the extreme west end of the yard with its rear end several hundred yards west of this crossing. Appellants are correct then in saying that the evidence on the former trial and on this trial was different in this respect. There is an element of danger in the direction of the east revealed by the evidence in the instant case more favorable to appellee's cause than the freight train erroneously shown on the former trial to have been standing on the passing track east of the crossing. In the instant case, it developed that about the time Mr. Billingsley approached the crossing where he was killed, a local freight train was expected from the east. In the exercise of ordinary care this would have justified him looking to the east first, to see whether the train was coming from that direction. He was familiar with the schedule time of the trains.

Second. On the former appeal, it was stated the evidence showed the distance to be fourteen feet between the north rail of the commercial track and the north rail of the main line. This statement was a mere clerical error, as shown by the several measurements that formed the sum total of the distance between these points. The statement referred to is as follows: "The distance between the commercial track and the passing track is eight feet, and the distance between the rails is five feet, and there is nine feet between the passing and main track, making a distance of fourteen feet between the

north rail of the commercial track and the north rail of the main track." By adding the several measurements referred to, the total distance would be twenty-seven feet, instead of fourteen feet. The distance between the rails of the commercial track was five feet; likewise, the distance between the rails of the passing track was five feet; the distance between the commercial track and passing track was eight feet; and the distance between the passing track and the main track was nine feet; which, taken together, makes a total of twenty-seven feet, showing that the addition was a mere clerical error. Appellant is therefore not correct in saying that the evidence in the present case in this respect is materially different from the evidence on the former trial.

With the modification suggested as to the absence of the freight train standing on a passing track east of the crossing, and that it was about the schedule time of the local freight train coming from the east, reference is made to the statement of facts in the original appeal as a correct statement of facts in the instant case. Under the modification, we think the facts are a little more favorable to appellee in the instant case than on the former appeal. There being no material change in the facts in the two trials, it can not be said now, any more than then, that the undisputed facts show that Mr. Billingsley, as a matter of law, was guilty of contributory negligence. For the reasons assigned in our original opinion, we adhere to our conclusion that, under the undisputed facts in the case, it was a question for the jury to determine whether or not Mr. Billingsley looked and listened for passing trains as he approached the railroad crossing. It was not error for the court to refuse to direct a verdict in favor of appellant.

Appellant insists that the judgment should be reversed because it was denied the benefit of contributory negligence on the part of Mr. Billingsley as a defense, on account of the instructions given and refused by the court. The action of the court, in refusing to give in-

struction "B" as requested by appellant, is first challenged. Instruction "B" is as follows:

"If you find and believe from all the facts and circumstances in evidence that Mr. Billingsley heard the train whistle for the station, if you find it did so, then no other signals were required to warn him of the approaching of the trains, because signals are intended for those who do not already know that a train is approaching."

This instruction was not a correct declaration of the law. Other signals were required to be given, under the law, announcing the approaching train. This court said, on the former appeal of this case, that the statutory signals were warnings which Billingsley had the right to rely upon in determining whether a train was approaching. The whistling of the train a mile or half-mile from the station was not necessarily sufficient notice to require travelers who heard the whistle to stop to look or listen for a train, or to wait for the train to pass before proceeding on their way. If near the crossing, there might have been ample time, after the whistle sounded a half-mile away, for travelers to pass over and on before a train reached the crossing. Thus the necessity for continuing to give statutory signals as a train approaches a crossing. Again, the question presented in appellant's request "B" was correctly and fully covered by instruction 10 given by the court, which is as follows: "If you believe from the evidence that Mr. Billingsley heard the train or knew it was approaching the crossing and attempted to cross the track ahead of the train without stopping, looking or listening, the plaintiff can not recover."

Instruction 10 is criticised by appellant because it is said the logic of it was to permit Billingsley to excuse his contributory negligence in rushing over the crossing in front of the train, if he knew it was approaching, by first stopping, looking and listening. We do not think the instruction susceptible of that construction or that the jury could have so understood it. We think the only reasonable meaning attributable to the instruction was

that, if Mr. Billingsley was aware of the approaching train, then it was his duty to stop, if necessary, to look or listen, in order to determine whether it was safe to cross ahead of the train.

The action of the court in refusing to give instructions "C" and "D," touching upon the defense of contributory negligence on the part of Billingsley, is also challenged. The first part of instruction "C" carries the same error pointed out in instruction "B." In so far as these instructions correctly declared the law, they were fully covered by instruction 9, given by the court, which is as follows: "Even though you may find that the engineer and fireman failed to sound the whistle or ring the bell as required by law, and that the train approached the crossing and station at a greater rate of speed than usual, still you can not find for the plaintiff if you find that Mr. Billingsley was guilty of any negligence which contributed to his injury and death. It was his duty under the law, upon approaching the crossing, to look and listen for the approach of trains, and if the situation was such that ordinary care required him to stop in order to effectively hear or see the train, to stop his wagon before going on the track, and if you find that he failed to comply with this duty, and such failure contributed to his death, your verdict should be for the defendant."

We think this instruction was a fair and complete declaration of the law on contributory negligence applicable to the facts in the case. Having fully covered the subject, it was not error to refuse to give instructions "C" and "D."

The correctness of instruction No. 2, given by the court, is challenged because it did not tell the jury travelers on highways crossing railroads are required to look and listen for trains and to stop, if necessary, in order to see and hear. The instruction inferentially imposes that very duty upon the traveler. It is as follows: "You are instructed that before you can find that the deceased Billingsley was guilty of contributory negli-

gence you must believe from the testimony that the deceased at the time of the injury failed to look and listen for approaching trains or to use ordinary care to avoid the injury, and ordinary care is such care as a reasonably prudent man would have used under the circumstances and conditions as shown by the testimony.''

It plainly tells the jury that unless Billingsley looked and listened for the approaching train and exercised such care to avoid the injury as a reasonably prudent man, under the same circumstances, would have done, such negligence would prevent a recovery. The jury must have understood that the duty rested upon Billingsley to look and listen and to stop to look and listen if he could not see or hear without doing so. The first part of instruction No. 5, given by the court, directly and unmistakably imposes that duty upon Billingsley. It was as follows: ''You are instructed that it was the duty of the deceased Billingsley in attempting to cross the defendant's track, to look and listen and to ascertain if a train was approaching, to the end that he might avoid a collision and otherwise to use ordinary care to prevent his being injured.''

Instruction No. 2, given by the court, is challenged as misleading, because unsupported by the evidence. It is contended that, if Billingsley had first looked west, instead of east, when his wagon passed the box-cars on the commercial track, he would have seen the approaching train in time to stop his team and avoid the injury, and that it was inexcusable negligence on his part to look east first, because the evidence failed to show there was any danger to be apprehended from that direction. There was evidence in the record tending to show that the local freight train from the east, due about the time of the accident, was irregular and apt to come in any time. It did arrive at 3:30 p. m. that day, a short time after the accident, so it can not be said that no danger was to be apprehended in the direction Billingsley first looked.

We have alluded to and discussed all suggestions of error in giving and refusing instructions which we regard as important. We do not believe it would serve any useful purpose to comment upon numerous other exceptions and objections to instructions given by the court. Suffice it to say, we have considered them carefully and regard none of them well taken. We think, upon the whole, the case was submitted under proper and correct declarations of law.

No error appearing, the judgment is affirmed.