St. Louis-San Francisco Ry. Company. *v.* Whitfield.

## Opinion delivered November 20, 1922.

1. NEGLIGENCE—WHAT LAW GOVERNS.—In an action for injuries from negligence in another State, the test of liability depends upon the laws of that State.

2. APPEAL AND ERROR—CONCLUSIVENESS OF VERDICT.—Where there was conflict in the evidence as to whether trainmen gave the statutory signals on approaching a crossing, and the issue was properly submitted to the ·jury, the verdict is conclusive on such question.

3. APPEAL AND ERROR—CONCLUSIVENESS OF VERDICT.—In determining the sufficiency of evidence to support a verdict against defendant, the Supreme Court will view the testimony in the light most favorable to plaintiff and give it such force as the jury might have given it.

4. RAILROADS—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.—In an action for the killing of the occupants of an automobile by a train at a highway crossing, where there was evidence that they looked and listened when 200 feet from the track and also when 100 feet from the track, that their view was obstructed until they reached a point 40 feet from the track, and that the train was running at least 50 miles an hour, if not faster, without signal on a dark, foggy morning, when dazzling lights came from an automobile facing them on the other side of the track, *held* the question whether they were guilty of contributory negligence in attempting to cross ahead of the train was for the jury.

5. RAILROADS—DUTY OF TRAVELER AT CROSSING.—A traveler at a railroad crossing must exercise ordinary care to discover the approach of trains and to avoid collisions, and in the exercise of such care must look and listen for the approach of trains, and if necessary must stop the vehicle in which he is traveling.

6. RAILROADS—BURDEN OF PROVING NEGLIGENCE.—In an action for death of travelers at a railroad crossing, the burden is on the railroad company to prove contributory negligence.

7. RAILROADS—CROSSING AHEAD OF TRAIN.—A traveler along a highway who attempts to make a crossing ahead of an approaching train may not speculate upon his chances of crossing in safety; but if the train is far enough away or appears to him in the exercise of ordinary care to be far enough away in order to justify the reasonable belief that the crossing may be made in safety, then it does not constitute negligence for him to undertake to make the crossing under the circumstances.

8.  DEATH—EXCESSIVE DAMAGES.—A verdict of $30,000 for the death of a man 32 years old having an earning capacity of $3,000 a year and having contributed as much as $1,500 or $2,000 to his family and a verdict of $25,000 for the death of his companion who was earning $1,500 or $2,000 a year, both men being young, active and intelligent, of good moral character, healthy and of good habits, *held* not excessive.

Appeal from Poinsett Circuit Court; *J. M. Futrell,* Judge; affirmed.

*W. F. Evans, W. J. Orr* and *E. L. Westbrook,* for appellant; *Moore, Smith, Moore & Trieber,* of counsel.

Since the accident happened in Oklahoma, the law of that State pertaining to the rights and duties of railroad companies and travelers at public crossings must govern.   98 Ark. 240.

As to the duties of travelers upon highways approaching a railroad crossing, the law of the State accords with the following line of cases: 61 Ark. 549; 110 *Id.* 161; 54 *Id.,* 431; 65 *Id.* 225; 90 S. W. 805; 30 *Id.* 339; 38 *Id.* 308; 174 U. S. 379; 114 *Id.* 615; 95 *Id.* 697; 130 Fed. 65; 171 *Id.* 319; 134 *Id.* 233; 92 Pac. 687; 24 Atl. 747; 34 Iowa 160; 80 Fed. 217.

We desire to call particular attention to the case of *Railroad* v. *Baker,* 104 S. W. 1182, wherein the facts set out at pages 1186, 1187 of the report are even more favorable to the plaintiff than the facts in this case. From that case it appears that the Oklahoma court approved the rule announced by this court prior to the lookout statute.   For a discussion as to the exceptions to the rule requiring one to look and listen, see 110 Ark. 161; 78 *Id.* 60.

Appellant's motion for a directed verdict should have been sustained.   Under the undisputed testimony of plaintiff's witness Brinkmyer, the physical facts testified to by him and others and the photographs of the situation, no legal excuse has been shown, or can be urged, why these men in the automobile did not see or hear the oncoming train, if they looked and listened for the same as the law demanded.   92 Pac. 687; 34 Iowa,

154; 174 N. W. 402; 30 S. W. 339; 233 S. W. 399; 168 Fed. 23; 188 Pac. 419; 42 N. E. 736; 103 S. E. 17; 27 Atl. 1064; 19 N. E. 422; 31 N. Y. S. 1033; 36 Atl. 731.

The presumption of due care for one's own safety cannot stand against proof that, had the decedents taken those precautions which the law demanded of them, they could plainly have seen the approach of the train in time to have avoided the danger.   The facts in *Tomlinson* v. *Railroad,* 134 Fed. 233, an Oklahoma case, make it a precedent here.   See also 99 Ark. 171; 85 *Id.* 534; 56 *Id.* 435; 97 *Id.* 443.

*Pace, Campbell & Davis,* for appellee.

As finally submitted to the jury, there were but two issues involved: (1) whether there was a failure to ring the bell or blow the whistle 80 rods before the train reached the crossing; (2) whether the decedents were guilty of contributory negligence.

1.   The evidence establishes the fact that there was a complete failure to give any signal whatever for the crossing.

2.   The decedents were not guilty of contributory negligence.   While the law of Oklahoma governs in so far as pertains to the rights and duties of the parties, the law of this State will govern as to the procedure, for the determination and enforcement of those rights and duties.   The law of this State, therefore, will govern, in determining whether the trial court erred in refusing to direct a verdict, and in submitting to the jury the question of contributory negligence of the deceased.   5 R. C. L. § 134, pp. 1042-1044.

As to the degree of care which it was the duty of these decedents to exercise in approaching and attempting to cross the railroad track, the law of Oklahoma is the same as that of this State.   28 Okla. 815; 42 *Id.* 501; 103 Ark. 374-378.

The issue of contributory negligence was properly submitted to the jury.    146 Ark. 555; 144 *Id.* 244; *Id.* 609; 138 *Id.* 539; *Id.* 175; 137 *Id.* 6; 136 *Id.* 246; *Id.* 1;

132 *Id.* 431; 117 *Id.* 457; 111 *Id.* 134; 105 *Id.* 180; 104 *Id.* 38; 101 *Id.* 315; 101 *Id.* 424: 97 *Id.* 405; 96 *Id.* 638; 270 Fed. 826.

That there was an absolute duty to look and listen resting upon the decedents is conceded; but whether or not they performed that duty was a question for the jury and properly submitted to them.

McCulloch, C. J. On February 8, 1921, P. W. Whitfield and A. F. Sanders, while crossing the railroad track of appellant in an automobile about one and one-half miles north of the town of Kiefer, in the State of Oklahoma, were struck and injured by a train operated by appellant, and both of the men died as the result of their injuries. Sanders died the next day. His body was mashed and his back was broken, but he was conscious until he died. Whitfield lived two months after the injury occurred. The hip bone of one of his legs was broken and crushed, and after his leg was dressed by surgeons a weight was swung to it and he was kept in a recumbent position for three weeks, and then his leg was put in a plaster cast. When the plaster was removed, it was found that the fractured bone had not united, and there was a running sore or blister where the plaster rested. After the sore healed up it was decided by other surgeons then treating him to operate by pulling the ends of the bone together and putting him in a silver plate. The man died during the operation.

Whitfield was twenty years of age, and was survived by his wife. Sanders was thirty-two years of age, and was survived by his wife and three children, aged, respectively, one, three and five years.

Appellant, A. B. Whitfield, who was the father of P. W. Whitfield, and uncle of Sanders, was appointed administrator of the estate of each of said decedents, and in those capacities he instituted in the circuit court of Poinsett County two actions against appellant to recover damages for the benefit of each estate and the next of kin.

The only act of negligence relied on as a basis for the recovery of damages is that the servants of appellant in charge of the train failed to give the signals when approaching the crossing, as required by the Oklahoma statute. The complaint in each case contained other allegations of negligence, but they were abandoned, and the cause was tried wholly on the charge of negligence on the part of the engineer or fireman in failing to give signals.

Appellant denied the charge of negligence, and pleaded contributory negligence on the part of each of said decedents in attempting to cross the track ahead of the approaching train, without exercising ordinary care to discover the approach of the train and to avoid a collision.

The cases were consolidated by consent, and the trial resulted in a verdict in favor of appellee in each case, the jury awarding damages in the sum of $25,000 in the Whitfield case, and the sum of $30,000 in the Sanders case.

There is a conflict in the evidence on the issue as to the failure of the trainmen to give the statutory signals, and there is also a conflict in the testimony as to the situation at the crossing at the time Whitfield and Sanders attempted to cross over.

The alleged acts of negligence and the injuries resulting therefrom having occurred in the State of Oklahoma, the test of liability depends upon the laws of that State. *St. L. I. M. & S. Ry. Co.* v. *Brown,* 67 Ark. 295; *St. L. I. M. & S. Ry. Co.* v. *Hesterly,* 98 Ark. 240.

The statutes of Oklahoma require that the bell on a locomotive engine shall be rung, or the whistle sounded, at a distance of at least eighty rods from a public highway. The statute differs from the Arkansas statute only in the fact that it does not require that the bell or whistle be sounded until the crossing be reached.

There is a sharp conflict in the testimony as to whether or not the signal was given, but it is conceded that there was sufficient testimony to go to the jury on

that issue; and, if the issue was properly submitted to the jury, it must be treated as settled by the verdict in favor of the appellee. The instructions will be discussed later. There is no contention that there was any error in the instructions as to the submission of the issue concerning the giving of signals.

Numerous witnesses testified on each side as to the giving of signals, but it is undisputed that the customary method of giving crossing signals was by blowing the whistle. The witnesses introduced by appellee testified, however, that signals at the crossing were not given by either method. According to the testimony, there were two crossings between the town of Kiefer and the crossing where the injuries involved in this case were inflicted, and the witnesses introduced by appellee all testified that there were no signals given after the train passed the station of Kiefer.

We come next to the question of contributory negligence, and this is the principal feature of the case relied on by counsel for appellant for a reversal of the judgment.

It is earnestly insisted that the uncontradicted evidence shows that the two decedents, Whitfield and Sanders, were guilty of contributory negligence, and that they and their personal representatives are barred from recovery of damages under the laws of Oklahoma. Counsel contend that the court should have directed a verdict in favor of appellant, and that the judgment should now be reversed and the cause dismissed for the reason that, as before stated, the evidence was not legally sufficient to warrant the submission of the issue of contributory negligence to the jury.

In testing the question of the legal sufficiency of the evidence we must, under rules well settled by the decisions of this court, view the testimony in the light most favorable to appellee, and give it such force as the jury might have given it.

The facts of the case, as the jury might have found from the testimony, are as follows:

Whitfield and Sanders both resided at the town of Kiefer, and were engaged in the mercantile business there with appellee, A. B. Whitfield, the administrator of the estates. They had all recently removed from the State of Arkansas, where they had lived for many years. Young Whitfield had been living at Kiefer for several months, but Sanders and A. B. Whitfield had been there only a few weeks. They (A. B. Whitfield and Sanders) had bought out a grocery business and were operating it it in copartnership, and young Whitfield was working for them as clerk.

Kiefer is four or five miles southeast of Sapulpa, both places being situated on appellant's line of railroad, and the two towns are connected by an improved public highway.

Early in the morning of February 8, 1921, Sanders and young Whitfield started from the store at Kiefer to drive to Sapulpa to deliver a lot of eggs which had been sold. They went in a Ford car, originally a roadster, on which had been placed a bed so that the car could be used for the delivery of goods. It was between 6:30 and 7 o'clock, according to the testimony, when they left the store at Kiefer, and the testimony tends to show that they were struck by the train at the crossing, about one and one-half miles northwest of Kiefer, about 7 o'clock. It was the second trip they had made from Kiefer to Sapulpa, having made a trip Saturday morning preceding the day in question, which was on Tuesday. The witnesses did not fix the time precisely, but all say that the two travelers reached the crossing about 7 o'clock. The witnesses stated that it was a dark and foggy morning, and rain was threatening. The headlight was burning on the engine when the collision occurred, and the lights were burning on the car which Whitfield and Sanders were driving, as well as on two other cars which were at the crossing at the same time.

The train which struck the two men was a regular passenger train going north, and it was a few minutes late. The testimony shows that the train was running at least fifty miles an hour, which was its usual speed, and there is other testimony that it was running faster than that. Some of the witnesses stated that it was running at a much higher rate of speed than usual.

The railroad track from Kiefer to Sapulpa is from southeast to northwest, and the crossing at which the injury occurred is at an angle of about forty-five degrees, and the highway along which decedents were traveling runs directly east and west. Witnesses who viewed the scene after the accident testified that the railroad at that place was laid on a dump seven or eight feet high and that the highway was graded up to that level, the incline extending about two hundred feet from the track on the east side of the road and about forty feet on the west side. The incline of the highway was eighteen feet wide, but narrowed to sixteen feet at the rails of the railroad track, where plank sixteen feet long covered the space between and for a short distance on each side of the rails. The country is flat and level along there, and it is in the heart of an oil district, which is pretty well covered with oil derricks, and where there are many houses.

The witnesses testified that, in approaching along the highway from east to west, at a point 220 feet east of the railroad track, there was a view south along the track for a distance of only about 300 feet; that 100 feet from the track there was an unobstructed view about 450 feet down the track, and that, after coming within forty feet of the track, there was an unobstructed view clear down the track for a distance of three-fourths of a mile, telephone poles along the right-of-way being the only obstruction. Appellant introduced photographs which tended to show an unobstructed view at a greater distance down the track, but this only makes a conflict in the testimony, which the jury has settled against the contention of appellant.

Though there were several persons who testified that they were not far distant from the crossing and that they heard the train coming and heard the impact of the collision, they did not see the collision, but there was only one eye-witness who testified about seeing the collision. This was a man named Brickmeyer, who lived at Sapulpa, and who was in an automobile en route from Sapulpa to Kiefer, when he stopped at the crossing at the time the collision occurred. Brickmeyer was, of course, crossing from west to east, and he testified that he approached the crossing at a speed of about forty miles an hour, and that when he saw the headlight of the train coming from the south he stopped his car on the incline, about 15 or 20 feet from the track, to await the passage of the train. He testified that he saw the Ford car which collided with the train come from the east with the headlights burning, and that it came to a stop about 200 feet from the track, which was about the bottom of the incline; that about this time some one driving another car came along from the west, with headlights burning, and passed around witness' car, went over the track and passed the Ford car which Whitfield and Sanders were driving about half way up the incline, the latter having in the meantime started up their car and begun ascending the incline at a speed of ten or twelve miles an hour, with their headlights burning. He stated that when the Ford car was about 100 feet from the track he saw the driver, who was on the left hand side of the car, turn his head towards the south as if looking in that direction, and that the car then passed on up the incline, and as it reached the track it was struck by the engine. The train ran about a quarter of a mile, and when it came to a stop the automobile was on the pilot of the engine, and the body of Sanders was lying there too. Whitfield had been carried about ninety or 100 feet and thrown to one side of the track.

Under the circumstances shown, it cannot be said as a matter of law that Whitfield and Sanders were

guilty of contributory negligence. The law of Oklahoma must, as we have already said, be accepted as the test of responsibility for the injury, but we fail to discover any difference between the laws of Oklahoma and the laws of this State except in the particular already mentioned in regard to the method of giving signals upon approaching crossings. The rule of law here, as well as in Oklahoma, is that a traveler approaching a railroad crossing along a public highway must exercise ordinary care to discover the approach of trains and to avoid collisions, and in the exercise of this care it is held, as a matter of law, that he must look and listen for the approach of trains, and, if necessary for that purpose, he must stop the vehicle in which he is traveling. Only in exceptional cases is the traveler relieved from the absolute duty of looking and listening for the approach of trains. *M. K. & T. Ry. Co.* v. *Horton*, 28 Okla. 815; *St. L. S. F. Ry. Co.* v. *Model Laundry*, 42 Okla. 505; *St. Louis, I. M. & S. R. Co.* v. *Martin*, 61 Ark. 549; *Little Rock & F. S. Ry. Co.* v. *Blewitt*, 65 Ark. 235; *Tiffin* v. *St. Louis, I. M. & S. Ry. Co.*, 78 Ark. 55. It is also settled that this vigilance on the part of the traveler must be maintained until the danger is past, and only under exceptional circumstances can it be relaxed.

According to the testimony in the case, the two travelers who were injured at the crossing stopped their car for the purpose of looking and listening for the approach of a train at a distance of about 200 feet from the track, and the train was not in view at that time. There is affirmative testimony also to the effect that at a distance of about 100 feet from the track the travelers, or at least one of them, again looked and listened for the approach of a train from the south, and that none was in view at that time.

Considering the speed of the train and the testimony of witnesses as to the distance of the view down the track at that point, the jury could have found that the train was not then in view of the travelers. Then the

testimony further is that the track was obstructed from
that point until a point forty feet from the track was
reached, and that then the view down the track was un-
obstructed.   The travelers came within the zone where
there was a clear track with their backs partially to
the south; they were ascending the incline, which at-
tained a height of seven or eight feet, and were faced by
another automobile with its headlights shining on the
other side of the track.   No alarm whistle had been
sounded, as required by statute, and as was shown to be
customary, and no train had been seen or heard by the
travelers when they stopped 200 feet from the track, nor
when they looked when 100 feet from the track.   They
had the right to rely, to some extent, upon the fact that
no warning of the approach of the train had been given
or had been heard.

It only required a few moments to cross the track in
safety from the place where they first could have dis-
covered the approach of the train, and it cannot be said,
as a matter of law, that they were guilty of negligence in
failing to look down the track during that short interval.
The case in that respect falls squarely, we think, within
the decision of this court in the recent case of *Smith* v.
*Mo. Pac. Rd. Co.,* 138 Ark. 589.   In that case the plaintiff
was driving in the daytime along a highway parallel with
the railroad, and there were trees which, to some extent,
obstructed the view, but when he came to the place where
the road turned to the crossing, about thirty-five yards
from the track, he pursued his journey without looking,
and, in disposing of the question of his contributory neg-
ligence, as a matter of law, we said:

"It will be remembered that the plaintiff drove
northward on the street parallel with the railroad track,
and that he said there were some trees just outside of the
right-of-way and some telegraph poles inside the right-
of-way which obscured his vision to the north.   In ad-
dition to this, he listened for the statutory signals for the
crossing to be given, and did not hear them.   It is true

he did not look for the train when he got on the crossing; but the track to the north was straight and plaintiff had been looking in that direction for the train and listening for its approach or signals thereof as he drove up the street. When he did not see or hear the train as he drove on the crossing, the jury might have found that he was justified, under the circumstances, in thinking there was no train coming near enough to prevent his crossing in safety, and that it would be best for his safety to devote his whole attention to driving his car over the crossing. He had only thirty-five yards to go, and it will be remembered that the train struck the hind wheels of his automobile, thus showing that in another instant he would have been across."

Again, it cannot be said, as a matter of law, that these travelers were guilty of contributory negligence in attempting to make the crossing ahead of the train, even if they looked and saw the train approaching. The burden of proof was, of course, on appellant to establish contributory negligence on the part of the travelers, and to show either that they failed to look and listen for the train when it could have been seen or heard, or that they saw the train approaching and negligently attempted to cross ahead of it. Now, it does not always constitute negligence for a traveler to attempt to make a crossing ahead of an approaching train. That depends upon the circumstances—the speed of the train and the distances of the traveler and the train, respectively, from the crossing. The test is whether the effort to cross the track with the train approaching is an act which a reasonably prudent person in the exercise of ordinary care would not attempt. A traveler along a highway who attempts to make a crossing ahead of an approaching train may not speculate upon his chances of crossing in safety: but if the train is far enough away, or appears to one in the exercise of ordinary care to be far enough away in order to justify the reasonable belief that the crossing may be made in safety, then it does not constitute negligence for the traveler to undertake to make the crossing

under those circumstances.  These principles are settled by repeated decisions of this court, and we find nothing to the contrary in the decisions of the Oklahoma courts. *St. L. I M. & S. Ry. Co.* v. *Hitt,* 76 Ark. 227; *St. L. I. M. & S. Ry. Co.* v. *Dillard,* 78 Ark. 520; *La. & Ark. R. R. Co.* v. *Ratcliffe,* 88 Ark. 524; *Arkansas & Louisiana Ry. Co.* v. *Graves,* 96 Ark. 638; *K. C. Sou. Ry. Co.* v. *Drew,* 103 Ark. 374; *St. L. I. M. & S. Ry. Co.* v. *Kimbrell,* 111 Ark. 134; *Smith* v. *Mo. Pac. R. Co., supra; St. L. S. F. Ry. Co.* v. *Adams,* 144 Ark. 609.

In *Kansas City Southern Ry. Co.* v. *Drew, supra,* the applicable rule is clearly stated as follows:

"At the crossing of the railroad track and the highway both the railway company and the traveler on the highway are bound to use ordinary care, the one to avoid inflicting injury and the other to avoid being injured, and the degree of care to be exercised by each is that which a prudent man would exercise under the circumstances of the case in endeavoring to perform his duty."

Applying the rule just stated concretely to the facts of the present case, the test of negligence on the part of the traveler is, whether or not, under the circumstances of this case, a reasonably prudent person, in the exercise of ordinary care, would have attempted to make the crossing in the manner in which these travelers did.  In making this test we must consider what these circumstances were as shown by the testimony in its light most favorable to the rights of appelleee.  The question is, did the travelers, acting as reasonably prudent men in the exercise of ordinary care, have reason to believe that they could make the crossing in safety?  They had stopped, looked and listened for the train and had heard none, thus being led to believe that no train was approaching, until they saw it when they came within forty feet of the track.  It was a dark, foggy morning, when distances and moving objects were deceptive, and the travelers may have been confused by the dazzling lights from the automobile which was facing them.  The train

was approaching at an unusual speed—faster than the travelers had a right to suppose it was approaching—and they were misled as to the distance of the train and the time they had within which to make the crossing before the train could reach that spot. The travelers were misled, too, largely by the negligent act of the operators of the train in failing to give the signal. It is also a question how far the view of the travelers might have been obstructed by the line of telephone poles running parallel with the track. It may not have obstructed the view so as to prevent seeing the train, but it might have caused a deceptive view in judging the distance and speed of the approaching train. Another feature of the situation, which is not without force in creating a deceptive condition calculated to mislead Whitfield and Sanders, was that Brickmeyer's car had stopped on the other side of the track, apparently in waiting and expectancy of these parties crossing at that time. At least the jury might have found that Whitfield and Sanders had the right to draw the inference from this circumstance that the traveler across the track was in a better attitude to observe the approach of the train, and that he did not observe a train closely approaching, and was expecting them to cross, the crossing not being wide enough for two cars at the same time. Brickmeyer was facing more to the south and was in a better position to notice the approach of the train. The fact is, as stated by Brickmeyer, that he saw the train and stopped his car to wait for the train to pass, but his purpose was fixed by the fact that he actually saw and correctly judged the distance of the train, and it does not alter the inference which Whitfield and Sanders might have drawn from this circumstance. They might, in other words, have believed, without looking back to see whether any train was coming from the south, that the man on the other side had stopped to wait for them to cross at that time.

When all these things are considered, we cannot say that there was contributory negligence on the part of the

travelers in attempting to make the crossing, even when they saw the train approaching. In fact, it is far more reasonable to conclude from the testimony in the case, even though the travelers had their backs partially turned to the train when they reached the spot where they could see it, that they saw the headlight of the approaching train, but that in the dim light of the foggy morning they were deceived as to the distance of the train from the crossing, as well as by the fact that no signals had been given at the place where they should have been given.

We reach the conclusion, therefore, that there was no error committed by the court in refusing to take the case away from the jury by a peremptory instruction.

It is also contend that the court erred in its charge to the jury, and in modifying certain requests of appellant for instructions.

One of the instructions requested by appellant and modified by the court contained two lengthy paragraphs, the first of which was devoted to the statement of the substance of the Oklahoma statute with respect to crossing signals, and concluded with the statement that the purpose of requiring such signals to be given is to inform the traveler that the train is coming, and that "if said traveler is informed of the approach of said train by the noise it makes or by seeing it, then the failure to ring the bell or blow the whistle would not constitute actionable negligence as to such traveler." The court gave this paragraph as a separate instruction, with a very slight and wholly unobjectionable modification. The other paragraph of this instruction was lengthy and argumentative in form, and was properly refused. In the form in which it was given, however, it contained the statement that "if there is a point after all obstructions are passed from which a train can be seen approaching the crossing and near thereto, and in such close proximity thereto that the driver of the automobile, if he sees the train, could not reasonably expect that he could pass over said crossing in safety before the train reached the same, then

it would be negligence upon his part to drive upon said crossing in front of said approaching train, and such negligence on his part would defeat any recovery for injury to him by a collision of said car."

While the court refused to give this part of the instruction, it gave the following, which fully and correctly states the law on this subject:

"3. You are instructed that a railroad track is at all times a constant warning to all persons aproaching said track and intending to cross the same, and you are further instructed that it is the duty of persons approaching the railroad track in an automobile to look and listen for the approach of trains, and to continue on his guard of looking until the danger is passed, and if such person, after he sees the approach of such train, goes on to the track·immediately in front of the train and is struck before he can get over the track, he is held in law to be guilty of contributory negligence."

There was no error, therefore, in the rulings of the court with respect to this request of appellant. This instruction No. 3 was given as a substitute and was a part of one requested by appellant. Other portions of the instruction were stricken out, but the portions thus eliminated were argumentative and added nothing to the substance of the law stated by the court in its instructions.

Error is assigned in the modification by the court of the following instructions by adding the word "negligently," so as to make the statement of the instructions to be "that, if a traveler sees the approach of the train or hears the approach, then he will not be excused from negligently going on the track immediately in front of the train," etc.

"C. You are instructed that, under the law of Oklahoma, where this accident happened, the railroad company is required to sound the whistle or ring the. bell at least eighty rods from the place where the railroad track crosses the public highway. You are further in-

structed that the purpose of this statute is to notify persons about to cross the railroad track at said highway that a train is approaching, and you are further instructed that, if such persons see the approach of said train or hear the approach of said train, then he will not be excused from going on the track immediately in front of such train because the railroad company has failed to either sound the bell or blow the whistle, as above stated, and the failure to give such signal in that case would not constitute negligence which would be in law the cause of the accident.''

There was no error in the modification, because otherwise it might have been understood as meaning that recovery would be denied merely because the train was seen approaching, regardless of its distance, or apparent distance, from the crossing.

Again, it is insisted that the court erred in giving the following instruction on its own motion:

''8.  You are instructed that, before you can find that the plaintiff, Mr. Sanders, was guilty of contributory negligence, you must believe from the testimony that the deceased, at the time of the injury, failed to look and listen for approaching trains and to use ordinary care to avoid the injury; and ordinary care is such care as an ordinarily prudent man would have used for his safety, under the circumstances and conditions as shown by the testimony.''

This instruction, when read in the light of others given by the court, was not erroneous in stating the test of contributory negligence on the part of the travelers. It was framed to meet the charge of contributory negligence both as to failing to look and listen and as to failing to exercise ordinary care after deceased saw the train, if the jury found that they saw the train. If it was thought that the use of the disjunctive word ''or'' would have better expressed the meaning, a specific objection should have been made to the use of the conjunctive.

In addition to the instructions already copied, the court gave No. 7, which reads as follows:

"Even though you may find that the agents and servants of the defendant failed to sound the whistle or ring the bell, as required by law, still you cannot find for the plaintiff if you find that Mr. Sanders was guilty of any negligence which contributed to his injury and death. It was his duty, under the law, in approaching the crossing, to look and listen for the approach of train, and if the situation was such that ordinary care required him to stop in order to effectually hear or see the train, to stop or caused to be stopped his car before going upon the track, and if you find that he failed to comply with this duty, and such failure contributed to his death, your verdict will be for the defendant."

We are of the opinion that there was no error of the court in charging the jury or in modifying the instructions requested by appellant.

Finally, it is insisted that the award of damages in each case is excessive.

The testimony of numerous witnesses shows that these men, who were killed as the result of the negligent acts of appellant's servants, were young, active and intelligent men of good moral character, healthy and of good habits; that one of them had been earning about $3,000 a year and contributed to his family as much as $1,500 to $2,000 a year, and that the other was capable of earning $1,500 or $2,000 a year at the time of his death. Each of them suffered great pain until his death, one for about thirty hours and the other for two months. It cannot be said, under these circumstances, that the verdict in either case is without sufficient evidence to support the findings as to the amount of damages to be awarded.

Each of the judgments is therefore affirmed.