FAIR OAKS STAVE COMPANY *v.* CROSS.

Opinion delivered October 8, 1928.

*E. L. Westbrooke, Jr.,* and *E. L. Westbrooke,* for appellant.

*Killough & Killough* and *Elmo CarlLee,* for appellee.

HART, C. J. Tom Cross, a minor, was killed while operating an equalizer in the stave factory of the Fair Oaks Stave Company, a partnership, and William Cross recovered judgment against said partnership for his son's wrongful death. The Fair Oaks Stave Company denied negligence, and pleaded assumption of risk.

The main reliance of appellants for a reversal of the judgment is that the court erred in not directing a verdict for them. Inasmuch as the correctness of the ruling of the trial court in this respect must be tested by the evidence for appellee when viewed in its most favorable light, we need only abstract the evidence tending to show the negligence of appellants.

On July 7, 1925, Tom Cross, a minor between seventeen and eighteen years of age, was killed while operating an equalizer at the stave factory of appellants. The equalizer consisted of two saws on a single axis, and it was the duty of Tom Cross to cut off the ends of the bolts on these saws as they were delivered to him on small trucks running on iron rails. The track on which the trucks were operated ran up behind the operator and between the two saws in question. The rails were laid on the floor, and there was no stop or bumper at the

end of the track next to the equalizer to keep the trucks from running off the track. The end of the track was between thirty and thirty-six inches from the equalizer. Cross would indicate to the pushers of the trucks when to stop pushing the trucks, and he would then take the bolts from the trucks and cut off the ends by placing the bolts between the two saws. Just before the accident, Cross was standing with his face to the equalizer, after he had finished cutting off the ends of a car of bolts. Two men pushing another car of bolts approached from behind him and pushed the car off of the end of the track, and hit him in the back, which threw him into the saws, where his body was mangled so that he died. The saws were running at the time of the accident, but were stopped immediately afterwards.

Tom Cross had not worked at the equalizer more than a day and a half at the time he was killed. He had worked around stave factories considerably before that time, but had never operated an equalizer. He would have been eighteen years old the following September. He was without experience in operating the equalizer, and had not been warned that there was any danger to him from there not being any bumper at the end of the track to stop the trucks from running off. One witness testified that he had worked around the stave factory for some time, and that he had seen trucks run off the end of the tracks twice before that. Witnesses of the plaintiff testified that it was usual and customary to run the tracks to the side of the equalizer instead of behind the operator and between the saws of the equalizer. Witnesses for the appellants testified that it was the better construction to have the tracks run behind and between the saws of the equalizer.

Two grounds of negligence on the part of the appellants were relied upon for a recovery. In the first place, it is alleged that the track used to carry the trucks of bolts to the equalizer ought to have been on the side of it instead of running directly behind the equalizer and between its two saws. The other ground of negligence

was that the appellants should have put a stop or bumper on the end of the track to keep the trucks from being pushed off the track and against the operator of the saws of the equalizer.

In the first place it is insisted by counsel for appellants that there was no allegation in the complaint of the failure to put a stop or bumper on the end of the track, and that, on this account, the court erred in allowing proof to go to the jury of the negligence of the appellants in this respect. We cannot agree with counsel in this contention. The appellee alleged that the bolts were delivered to the operator of the equalizer by means of small trucks running on iron rails which came up to the rear of the equalizer, and that the rails were so constructed that the trucks operated on them could easily run off the end of the track and strike the operator of the equalizer. This was tantamount to an allegation that the appellants were negligent in not putting a stop or bumper at the end of the track to keep the trucks from running off the track when they were pushed up to the equalizer. Under the circumstances we are of the opinion that the jury was warranted in finding that appellants were guilty of negligence in not either running the track to the side of the equalizer or in not placing a stop or bumper on the end of the rails, if they were run up behind the operator and between the saws of the equalizer. This would have been an inexpensive matter; and if the appellants deemed it best to run the tracks up to the rear and between the saws of the equalizer in order to facilitate the operator in taking the bolts from the trucks for the purpose of sawing off their ends on the saws of the equalizer, it would have been a comparatively simple matter to have placed a stop or bumper on the end of the track so that the trucks could not have been easily pushed off the track. At the least the jury was warranted in finding the appellants guilty of negligence in failing to do this.

It is next insisted that the court should have directed a verdict in favor of appellants because the evidence,

when viewed in the light most favorable to the appellee, shows that Tom Cross assumed the risk of operating the saws of the equalizer. We regard this as a close question; but, when the age and inexperience of Tom Cross is taken into consideration, we cannot say as a matter of law that he assumed the risk. It is true, as held in *Temple Cotton Oil Co.* v. *Skinner,* 176 Ark. 17, 2 S. W. (2d) 676, and numerous other decisions of this court, that an employee assumes all risks naturally and reasonably incident to his service, where the hazards of the service are obvious and within the apprehension of a person of his experience and understanding. This is in application of the well-settled rule in this State that, by his contract of service, a servant agrees to bear the risk of all the ordinary dangers incident thereto, and no recovery can be had for an injury resulting therefrom. Of course the fact that the end of the rails did not have a stop or bumper on them was obvious to the operator of the equalizer, and, if he had been a person of mature years, he would have been deemed, as a matter of law, to have seen and apprehended the danger of operating the equalizer without demanding of his employer that a stop or bumper be placed at the end of the rails over which the trucks containing the bolts were pushed. The evidence shows that Tom Cross had only operated the equalizer a day and a half at the time he was killed, and that no warning had been given him of the danger he might incur. Assumption of risk in the case of young and inexperienced servants is not always predicable from a knowledge of the conditions alone of his working place. In order to say conclusively that there was an intelligent consent on his part to the danger and thereby an assumption of risk by him, the testimony must show that the conditions surrounding him were such that a person of his age and inexperience must be deemed to appreciate the dangers of his work. *Brackett* v. *Queen,* 162 Ark. 524, 258 S. W. 635; and *Hogue* v. *Bundy,* 168 Ark. 879, 271 S. W. 979.

Under the existing circumstances as they appear from the record we are convinced that the testimony was sufficient to warrant the jury in finding the appellants guilty of negligence in failing to properly equip the tracks on which the trucks were run with a stop or bumper, or else running the tracks to the side of the equalizer instead of to the rear and between the saws of the equalizer, and that Cross could not be said, as a matter of law, to have assumed the risk, when we consider his age and inexperience. It is true, as contended by counsel for appellants, that Cross had worked around stave factories before, but it does not appear that he had ever before operated an equalizer, nor could he be said to have, as a matter of law, apprehended the danger of operating an equalizer without there being a stop or bumper at the end of the track, when the track was constructed as in the present case. *Eureka Oil Co.* v. *Mooney,* 173 Ark. 335, 292 S. W. 681; and *Breece-White Mfg. Co.* v. *Green,* 171 Ark. 968, 287 S. W. 173.

In this connection it may be stated that it is earnestly insisted that the court erred in permitting a witness for appellee to say that he had seen a truck run off the track at the same place twice before within a short time before the accident in the case at bar took place. In this contention counsel rely upon that class of cases which tend to show that a declaration of a servant as to how an accident happened cannot be used to show negligence on the part of his master. In the first place, it may be said that the witness who testified to this fact was not one of the servants who were pushing the truck at the time of the accident. He was another servant of the company, who was in no manner responsible for the accident, and who merely happened to see it. His testimony that he had seen a truck pushed off the track twice before within a short time was competent for the purpose of establishing the negligence of the appellants. It tended to show that it was an easy matter to push a truck off of the track where there was no stop or bumper at the end of the track, and appellants were

deemed to have knowledge of this fact, and might thus have reasonably anticipated that just such an accident as did happen was likely to happen.

Complaint is also made by counsel for appellants to some of the instructions given by the court. We do not deem it necessary, however, to set out these instructions nor to discuss each of them in detail. It is sufficient to say that we have carefully considered them, and that the court was governed by the principles of law above announced in giving them.

We find no reversible error in the record, and therefore the judgment will be affirmed.