BENEFIT ASSOCIATION OF RAILWAY EMPLOYEES *v.* McKAMEY.

4-7082                                                      171 S. W. 2d 937

Opinion delivered May 31, 1943.

*John M. Lofton, Jr.,* and *Owens, Ehrman & McHaney,* for appellant.

*J. H. Lookadoo* and *Agnes F. Ashby,* for appellee.

McFADDIN, J. The appellee in this case is the same person as the appellee in case No. 7061 in this court styled, *Missouri Pacific Railroad Company* v. *McKamey, ante,* p. 907, 171 S. W. 2d 932, but this present case was not tried with the other case, and this record is entirely separate. The only question here is the refusal of the trial court to direct a verdict for appellant.

The appellee sued appellant for benefits under an insurance policy which provided for indemnity "for loss resulting directly, and exclusively of all other causes, from bodily injuries sustained at any time during the life of this policy solely through external, violent and accidental means." The appellee alleged that he was employed by the Missouri Pacific Railroad Company as a member of a bridge building crew, and while so employed he struck the end of a bar against a timber in an effort to move the timber into position, and that some of the creosote solution on the timber splashed up in his face and eyes and inflicted the injury to his eyes, resulting in total disability. The appellant admitted that the policy was issued in 1933 and was in full force at the time of the alleged accident, and conceded that the fluid splashed in appellee's eyes; but appellant contended that the appellee wholly failed to prove that the alleged defect to his eyes resulted from that accident.

At the outset we point out two well-known legal principles:

1. The burden was on the appellee to prove not only that he suffered an accident, but also that his injuries involved in this case (practical loss of useful vision) were the direct result of this accident. *National Life & Accident Insurance Co.* v. *Hampton,* 189 Ark. 377, 72 S. W. 2d 543; *Mutual Benefit Health & Accident Association* v. *Basham,* 191 Ark. 679, 87 S. W. 2d 583.

2. In passing on the question of whether the trial court should have granted an instructed verdict for the appellant, the Supreme Court must give the evidence for the appellee its highest probative value. *St. Louis-San Francisco Railway Co.* v. *Whitfield,* 155 Ark. 560, 245 S. W. 323; *Fair Oaks Stave Co.* v. *Cross,* 177 Ark. 1146, 9

S. W. 2d 580; *Brown & Sons Lbr. Co. v. Oaties,* 189 Ark. 338, 72 S. W. 2d 213; *Missouri Pacific Railroad Co. v. Harville,* 185 Ark. 47, 46 S. W. 2d 17. Other cases are collected in West's Arkansas Digest, "Appeal and Error," § 927 (7).

With the above principles in mind, we find the following points appear in the evidence:

1. It was shown that the appellee's vision was normal before the accident. The appellee testified that every six months he was examined by Dr. J. T. McLain, the physician for the railroad company; and that at his last examination prior to the accident here involved, the appellee's eyes were normal; that appellee had never used glasses, although he was fifty years old. Dr. J. T. McLain testified that on September 15, 1940, he examined the appellee and found his vision normal.

2. It was shown that the creosote solution got in the appellee's eyes, and that he suffered immediately and continued to suffer. The appellee and disinterested witnesses testified about the creosote solution getting in appellee's eyes, and that appellee was unable to continue work then or at any time thereafter. Dr. J. T. McLain testified that in June, 1941, (two or three days after the accident) he examined appellee's eyes and found them inflamed, and that after several days' treatment Dr. McLain advised the appellee to consult an eye specialist. Appellee detailed trips to eye specialists in St. Louis and Little Rock covering a period of several months.

3. It was shown that appellee's vision was seriously impaired. Dr. Z. N. Short, of Hot Springs, an expert in eye, ear, nose and throat matters, testified that in May, 1942, he examined appellee and found his vision to be 20/200, which was practically no vision for occupational work; and that in Dr. Short's opinion appellee's eyes will never get any better and will gradually grow worse. Dr. E. D. McKay of Texarkana, who is an eye, ear, nose and throat specialist, testified that on January 28, 1942, he examined appellee's eyes and found his vision to be 20/200 in each eye; and that with 20/200 vision the appellee's eyes were almost useless for reading, and it

would be hazardous for him to be on the street, and that he could not be allowed to drive a car, and that he was unfit for occupational work. Dr. McKay testified that the condition of appellee's eyes was permanent and his condition was not improving.

4. It was the opinion of Drs. Short and McKay that the creosote solution could and did cause the injury to appellee's eyes.. Dr. Short testified that appellee had an atrophy of the optic nerve in each eye; and from a full history of the case, it was Dr. Short's opinion that the condition was caused by toxemia from the creosote solution in appellee's eyes. The following answer by Dr. Short shows the strength of the testimony of this witness: "When you take into consideration the whole history of the case and the laboratory test which eliminated everything which could cause it, then I had to conclude that it was caused by the creosote and the results of getting it around and in his eyes." Dr. McKay testified that he gave appellee many and various examinations (including both a blood Wassermann and a spinal Wassermann) and attempted to eliminate all factors that could cause the injury to the eyes; and it was the doctor's diagnosis and testimony that the trouble with the appellee's eyes was caused by the absorption of the toxin from the creosote.

We have not attempted to detail all of the evidence, but only sufficient of it to show that there was substantial evidence to support the submission of the case to the jury.

We, therefore, conclude that the request for instructed verdict was properly overruled, and the judgment is affirmed.