STANDARD OIL COMPANY OF LOUISIANA *v.* DYKES.

4-4158

Opinion delivered February 17, 1936.

*T. M. Milling* and *Gaughan, Sifford, Godwin & Gaughan,* for appellant.

*J. S. Thomas* and *Coulter & Coulter,* for appellee.

McHANEY, J.   Appellee was an oil pumper in the employ of appellant and had been for many years.   On May 26, 1934, at the request of the appellant and under its rules requiring all of its employees so to do, appellee was vaccinated against smallpox by his own physician.   The vaccination was effective, and his arm became sore and inflamed.   On June 21, 1934, appellee suggested to his foreman that, on account of the condition of his arm from the vaccination, he would like to lay off for a few days.   The foreman told him that it would be inconvenient to get a man to take his place, and that, if he felt he could do so, he would like for him to continue his work, which he did.   About 10 o'clock on the night of June 21, shortly before going off duty, his shift being from 2 P. M. to 10 P. M., he undertook to treat the oil in tank No. 2 by switching it from that tank to another in order to work a substance out of the oil referred to in this record as B. S., which we understand

to mean basic substance or basic sediment, consisting of a mixture of water and other substances not good for the oil. In doing this it became necessary to open a valve or stopcock in the pipe line attached to tank No. 2 in order to permit the oil to be pumped out of that tank through the pipe line to another tank. It was necessary to turn the core in the valve with a wrench so as to turn the opening in the core parallel with the pipe so that the oil would pass through. The core of this valve had no nut on the end thereof. Ordinarily the cores in the valves do have nuts which are tightened up in order to hold the valve closed and prevent the leakage and waste of oil. In opening the valve it is necessary to loosen the nut and sometimes tap the nut end of the core so that it may easily be turned with the wrench. In attempting to loosen the core in the valve at tank No. 2, appellee tapped the nut end of the core with his wrench, holding his left hand on the other end of the core to prevent it from falling out. For some reason, either by striking the core too hard with the wrench or in removing his hand from the other end of the core, he permitted it to fall out of the valve and this caused the oil in the line to spurt out over him, some of which got upon the inflamed sore upon his arm caused by the vaccination. This was on the night of June 21, 1934.

He brought this action against appellant to recover a large amount of damages on March 7, 1935, in which he alleged that appellant was negligent on a number of grounds in connection with the incident above referred to, and that the oil contained a poisonous and foreign substance that caused an infection in his vaccination wound which resulted in a serious case of arthritis or injury to his left ankle from which he has suffered permanent and total disability. Appellant denied the allegations of negligence contained in the complaint, pleaded assumption of risk and contributory negligence as bar to the action.

The case was tried to a jury which resulted in a verdict and judgment against appellant in the sum of $15,000.

A number of errors are assigned for a reversal of the judgment against appellant, but we think it neces-

sary to discuss only one of them. Appellant requested the court to direct a verdict in its favor at the conclusion of the evidence for appellee and again at the conclusion of all the evidence, which was refused by the court, and we agree with appellant that the court erred in this respect because there is no substantial evidence to sustain the verdict. Assuming without deciding that appellant was negligent in the manner alleged in the complaint and that appellee did not assume the risk and was not guilty of contributory negligence as a matter of law, still the verdict is based upon speculation and conjecture and cannot be permitted to stand. There is no proof in this record that the crude oil which appellee was attempting to work or treat by circulating it from one tank to another, contained any poisonous substance, or, if we assume it contained a poisonous or foreign substance, that it did or could have caused the particular injuries of which appellee complains. Practically all of the witnesses, if not all of them, agree that crude oil is not poison in the sense that it contains germs which might affect appellee in the manner complained of. On the contrary, the proof is that crude oil is an antiseptic. Appellee's own physician testified that the germ causing his trouble was not in the oil, but would have to be on the body and taken into the wound by the oil. He did not testify that such did happen, but did say that, if he had a germ on his arm, it could get into the vaccination wound and cause the infection resulting in arthritis of which appellee complains, without the aid of the oil. The most that can be said of the testimony, without reciting it in detail, is that the oil might have caused an infection, not that it did. But this is purely speculation and conjecture. A number of physicians testified on both sides that arthritis is the result of a focal infection, sometimes caused by bad teeth, sometimes by bad tonsils and most frequently by an infected prostate gland, resulting from gonorrhea, and gonococcal germs were found by three of the physicians in a smear of appellee's prostatic fluid. It was their very definite opinion that appellee's arthritis was caused by this condition, but, whether it was or not, just as it is regarding the oil, is a matter of specula-

tion and conjecture. As we said in the recent case of *Marathon Oil Company* v. *Sowell,* 191 Ark. 865, 88 S. W. (2d) 82: "The law, however, does not permit verdicts and judgments to rest upon speculation and conjecture. *National Life & Acc. Ins. Co.* v. *Hampton,* 189 Ark. 377, 72 S. W. (2d) 543. It is the general rule in this State that, in an action for personal injuries caused by the negligent conduct of another, no recovery can be had, in the absence of evidence showing it to have been the proximate cause of the injuries complained of. As stated by Judge Hart in *Mays* v. *Ritchie Grocery Co.,* 177 Ark. 35, 5 S. W. (2d) 728: 'It is also the general rule in this State that, in order to warrant a finding that negligence is the proximate cause of an injury, it must appear that the injury was the actual and probable consequence of the negligence, and that it ought to have been foreseen in the light of the attending circumstances.' Also, as we said in *Wisconsin & Arkansas Lumber Company* v. *Scott,* 153 Ark. 65, 230 S. W. 391, quoted with approval in *Alaska Lumber Company* v. *Spurlin,* 183 Ark. 576, 37 S. W. (2d) 82: 'To constitute actionable negligence, there must be negligence and injury resulting as the proximate cause of it. Proximate cause has been defined as a cause from which a person of ordinary experience and sagacity could foresee that the result might probably ensue.'"

We do not set out the evidence in detail in regard to this matter, as no useful purpose could be served thereby. It is sufficient to say that the evidence as to what causes appellee's arthritic condition is speculative and conjectural, and therefore not sufficient to sustain the verdict and judgment in this case.

The judgment will therefore be reversed, and, as the cause appears to have been fully developed, it will be dismissed.

It is so ordered.